**WERNLE, RISTINE &
AYERS, Appellant,**

v.

**Janice YUND and The Kroger
Company, Appellees.**

**No. 93A02–0012–EX–819.**

Court of Appeals of Indiana.

Nov. 16, 2001.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, David L. Steiner, Dep. Atty. Gen., and G. Terrence Coriden, Worker's Comp. Bd. of Indiana, Indianapolis, Indiana, Attorneys for Amicus Curiae.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

James E. Ayers petitioned the Worker's Compensation Board ("the Board") for $1,700.00 in attorney's fees and $2,336.63 in expenses arising from his representation of Janice Yund in her worker's compensation claim. A Single Hearing Member awarded Ayers $1,200.00 in attorney's fees but awarded nothing for expenses. Ayers petitioned the full Board, which affirmed the Single Hearing Member's decision. On appeal, Ayers presents three issues for our review, which we consolidate and restate as whether the Board has the sole authority to determine the amount paid an attorney for a physician's services and litigation expenses notwithstanding an employee's contractual obligation to reimburse her attorney.[1]

We affirm.

### FACTS AND PROCEDURAL HISTORY

Yund, an employee of The Kroger Company ("Kroger"), sustained a work-related injury in 1995, and she retained Ayers to represent her in a claim under the Worker's Compensation Act ("the Act"). Ayers hired Dr. Franklin Nash to examine Yund and to testify at her hearing before the Board. Ayers did not provide Kroger's counsel with any report prepared by Dr. Nash, and the Board restricted Dr. Nash's testimony at the hearing to challenges to the permanent impairment ratings assigned by physicians hired by Kroger. Dr. Nash submitted his fees to Ayers. Under her written contract with Ayers, Yund agreed to pay "all cost[s] of investigation and preparation, including charges for medical ... examinations, ... consultations and testimony from expert witnesses." In addition, the contract provided that "[i]f no recovery is made, or if the amount of any recovery is not sufficient to reimburse Attorney, Client is nevertheless still liable for out-of-pocket expenses incurred by Attorney regardless of whether or not a fee is received." Dr. Nash charged $986.00 for his examination of Yund and $500.00 for his testimony at her hearing.

Following the hearing, and after Kroger had offered Yund a settlement of $8,500.00, Yund advised Ayers that she was terminating their attorney-client relationship. Yund, pro se, then settled her claim with

---

1. Ayers does not appeal the amount awarded him for attorney's fees.

Kroger for $8,500.00. The Board approved the settlement agreement, and Ayers submitted a "Petition for Attorney's Fees and Costs," seeking 20% of the settlement[2] ($1,700.00) plus $2,336.63 in expenses, of which $1,486.00 were Dr. Nash's fees. A single hearing member awarded Ayers a total of $1,200.00 in attorney's fees and specifically ordered that Yund was not to pay Dr. Nash's expenses.[3] The order said nothing about other costs. Ayers petitioned the full Board, which affirmed the single hearing member's decision. This appeal followed.

## DISCUSSION AND DECISION

 We review the decision of the Board, not to reweigh the evidence or judge the credibility of witnesses, but only to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Board's findings and conclusions. *Walker v. State*, 694 N.E.2d 258, 266 (Ind.1998). Where the question before this court, however, is primarily a legal question, we do not grant the same degree of deference to the Board's decision, "for law is the province of the judiciary and our constitutional system empowers the courts to draw legal conclusions." *Id.* Moreover, in performing a legal analysis and in interpreting the provisions of the Worker's Compensation Act, we construe the Act and resolve doubts in the application of its terms in favor of the employee so as to effectuate the Act's humanitarian purpose to provide injured workers with an expeditious and adequate remedy. *Id.*

Ayers contends that the Board's statutory authority to determine fees of attorneys and physicians does not include authority to determine expert witness fees or other litigation costs.[4] The Board has filed an amicus curiae brief and responds that it acted within its authority when it ordered that Yund was not to pay Dr. Nash's expenses.[5]

The Board has the sole authority and discretion to award attorney's fees. *See* 631 Ind. Admin Code 1–1–24; Ind.Code § 22–3–1–3. Contingent fee agreements in worker's compensation actions, such as the agreement between Ayers and Yund, are subject to the provisions of the Rules of Professional Conduct, which clearly distinguish between attorney's fees and litigation expenses. *See* Ind. Professional Conduct Rule 1.5(c); *In the Matter of Anonymous*, 657 N.E.2d 394, 395 (Ind. 1995). But neither the Act nor the Indiana Administrative Code address a claimant's liability to reimburse her attorney for litigation expenses. *See* 631 IAC 1–1–24.

The Board also has the sole authority and discretion to approve a physician's claims for services provided to an employee-claimant. Indiana Code Section 22–3–4–12 provides that physicians' fees "shall be subject to the approval of [the Board]."

---

**2.** 631 Indiana Administrative Code 1–1–24 includes a schedule of attorney's fees and provides that an attorney should receive 20% on awards up to $10,000.00. The Board may, however, award more or less than that amount in its discretion.

**3.** At the hearing, Dr. Nash testified that his professional license had previously been suspended and that the Medical Licensing Board found that he had previously engaged in "conduct constituting fraud and material deception" in the course of his professional services. At the time he examined Yund, however, his license had been reinstated.

**4.** We note that Ayers' argument on appeal is limited to whether the Board had statutory authority to deny payment of Dr. Nash's fees, and not whether the Board abused its discretion in denying payment.

**5.** Kroger and Yund did not file appellees' briefs.

And Indiana Code Section 22–3–3–5 provides, in relevant part, that:

> The employee ... [does] not have liability to a health care provider for payment for services obtained under IC 22–3–3–4[6].... *All claims by a health care provider for payment for services are against the employer and the employer's insurance carrier, if any, and must be made with the board under IC 22–3–2 through IC 22–3–6.*

(Emphasis added). Whether a physician's fee for expert testimony falls under these statutes is an issue of first impression.

We have previously addressed the scope of the Board's authority under Indiana Code Section 22–3–3–5. In *St. Mary Med. Ctr. v. Baker*, 611 N.E.2d 135, 137 (Ind.Ct. App.1993), *trans. denied.*, the hospital filed a complaint against an employee-claimant, Baker, seeking to recover unpaid medical expenses for an employment-related injury. The worker's compensation carrier had "paid a portion of the total charges billed but disputed the validity of certain other charges." *Id.* at 136. We affirmed the trial court's dismissal of the complaint for lack of jurisdiction, noting that the Board has "exclusive primary jurisdiction" to decide issues under the Act. *Id.* at 137. Citing Indiana Code Section 22–3–3–5, we determined that St. Mary's claim for payment "above that voluntarily provided by the employer's insurer should have been addressed to the worker's compensation board." *Id.* The statute makes clear, then, that when a health care provider seeks to recover payment for services rendered to an employee-claimant, the matter is exclusively within the Board's authority.

[3] Here, we are concerned with Ayers' attempt to recover payment for Dr. Nash's services from Yund. At issue is whether the Act controls Yund's liability for fees arising from Dr. Nash's examination and testimony, which Ayers characterizes as "litigation expenses or expenses of investigation and preparation." Ayers contends that the Board's authority to approve payment for a physician's services is limited to *medical* services provided by an *attending* physician.[7]

■ We find nothing in the Act to support Ayers' contention that, concerning the Board's authority to approve physicians' fees, a distinction should be made between a physician's charge for medical services and that for providing expert testimony. Indeed, our legislature has expressly precluded any such distinction with the broad language it employed in Indiana Code Sections 22–3–3–5 and 22–3–4–12. Neither the phrase "claims by a health care provider," nor the term "services" is qualified, as Ayers contends. Given the plain meaning

---

6. Indiana Code Section 22–3–3–4 provides in part that, subject to the approval of the Board, an employer is liable for an employee's medical treatment sought "prior to an adjudication of permanent impairment;" during the period of "temporary total disability;" and after an employee's injury has been adjudicated on the basis of permanent partial impairment and "within the statutory period for review." In addition, subject to the approval of the Board, an employer is liable for medical treatment provided to an employee by a physician "other than that provided by the employer ... during the period of the employee's temporary total disability." *Id.*

7. Ayers cites the former version of Indiana Code Section 22–3–4–12 for this proposition. However, in 1997, the legislature revised that section and deleted the sentence on which Ayers relies. The statute used to read, in relevant part: "The industrial board may withhold the approval of the fees of the *attending physician* in any case until he shall file a report with the industrial board on the form prescribed by such board." (Emphasis added).

of these statutory provisions,[8] coupled with our duty to construe the Act in favor of the employee, we conclude that the Board has the sole authority to determine a claimant's liability for physicians' fees, regardless of whether those fees are characterized as "litigation expenses," and regardless of whether the attorney-client contract purports to hold the employee liable for such fees. Accordingly, we determine that the Board had authority to order that Yund be relieved of any liability for Dr. Nash's fees.[9]

The question remains, however, whether the Board has the sole authority to determine an employee's liability for litigation expenses, which, under the Act, cannot include physicians' fees. We note that, on its face, the Board's $1,200.00 attorney fee award, coupled with the order that Yund shall not pay Dr. Nash's fees,[10] appears to shift all of the litigation expenses to Ayers. But the Board's order does not purport to prohibit Ayers from claiming reimbursement from Yund for litigation expenses, as provided in their contract. Except for the authority to approve or disapprove physicians' fees, the Board does not have authority under the Act to determine the claimant's contractual liability to reimburse her attorney for ordinary and necessary out-of-pocket litigation expenses. In other words, while an attorney may petition the Board for such expenses, the Board's authority does not supersede the terms of an attorney-client contract. Accordingly, the reimbursement provisions in the contract between Ayers and Yund control with respect to litigation expenses and survive termination of their attorney-client relationship. Insofar as these expenses are concerned, the Act does not impair the respective rights and responsibilities of the parties under the contract, which are an ordinary civil matter.

Affirmed.

SHARPNACK, C.J., and RILEY, J., concur.

---

8. "[W]hen a statute is clear and unambiguous on its face, this court need not, and indeed may not, interpret the statute. Instead we must hold the statute to its clear and plain meaning." *Miller v. Walker*, 642 N.E.2d 1000, 1001–02 (Ind.Ct.App.1994) (citations omitted), *aff'd*, 655 N.E.2d 47 (Ind.1995). Indeed, Ayers does not ask this court to interpret these statutes.

9. Ayers also contends that the Board's decision forces him to violate Rule of Professional Conduct 1.8(e), which prohibits "financial assistance to a client in connection with pending or contemplated litigation." We cannot agree. Many attorney-client relationships based upon contingent fee agreements, especially in the personal injury arena, require the attorney to pay expert witness fees in advance of a settlement or verdict despite the possibility of an unfavorable award. In many cases, despite a client's contractual agreement to reimburse the attorney for such expenses, the client may simply not have the funds available to pay and the attorney is forced to absorb the loss. Such is the case here, and we find no violation of the Rules of Professional Conduct.

10. Although the record is not entirely clear, it appears the Board questioned the value of Dr. Nash's services or the reasonableness of his charges. Ayers maintains that Dr. Nash's testimony was valuable in undermining the bases for the impairment ratings assigned to Yund. Ayers points out that Kroger's settlement offer more than doubled after Ayers had employed Dr. Nash. But when Dr. Nash testified at Yund's hearing, the Board precluded any testimony by him regarding his examination of Yund because Ayers had not provided Kroger with "a statement in writing of the conditions evidenced by such examination" as required by Indiana Code Section 22–3–3–6(d).