**WERNLE, RISTINE & AYERS,**
Intervenor–Appellant,

v.

Janice YUND, Plaintiff–Appellee,

and

**The Kroger Company, Defendant–Appellee.**

No. 93S02–0207–EX–399.

Supreme Court of Indiana.

June 30, 2003.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, IN, Attorney for Appellant.

G. Terrence Coriden, Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Worker's Compensation Board Of Indiana.

On Civil Transfer

DICKSON, Justice.

This appeal challenges an order of the Indiana Worker's Compensation Board ("Board") stating that no expenses of a

claimant-employee's physician shall be paid by the employee. We hold that such a determination is within the Board's authority to approve the fees of physicians, and that the record in this case fails to demonstrate that the Board's ruling conflicts with the attorney-client fee agreement or the lawyer's professional obligations regarding the payment of litigation expenses.

The designation of parties to this appeal arises from the unusual procedural history of this case. Janice Yund retained James E. Ayers of the Crawfordsville, Indiana, law firm of Wernle, Ristine & Ayers ("WR & A"), to represent her in a Worker's Compensation claim against The Kroger Company for an employment injury on November 18, 1995. The attorney-client relationship of WR & A and Yund was reflected in a written "Contract to Hire Attorney on Contingency Fee Basis for Worker's Compensation Matter." Record at 56. The contract stated, "Attorneys will be paid for their services at the formula amounts provided by current Worker's Compensation Board Rule and limited to such fees as may be approved by the Worker's Compensation Board" and recited the Board's current fee schedule, including "upon the first $10,000 of recovery, 20%." Record at 56. The contract also provided for payment of litigation expenses as follows:

> Client understands that there will be expenses involved in this case. Client agrees to pay all cost of investigation and preparation, including charges for medical or other examinations, tests, consultations and testimony from expert witnesses, depositions, reporting fees, travel, long-distance phone calls, copying, postage, etc. and that all such expenses should be paid directly from any award and to the extent any such expenses have been advanced by the Attorney, to Attorney from any award. If no recovery is made, or if the amount of any recovery is not sufficient to reimburse Attorney, Client is nevertheless still liable for out-of-pocket expenses incurred by Attorney regardless of whether or not a fee is received.

Record at 56. Ayers hired Dr. Franklin D. Nash to examine Yund and to provide expert testimony.

The matter proceeded to a hearing on April 27, 2000. Before the hearing began, Kroger increased its previous settlement offer of $4,000 to $7,500. During the hearing, Ayers called Dr. Nash, who testified briefly. He did not testify regarding his impairment evaluation of Yund, but only regarding the American Medical Association Guides for evaluating impairment. During its cross-examination of Dr. Nash, Kroger elicited his admission that, although a licensed physician, he was not an orthopedic surgeon, neurologist, physiatrist, or physical medicine and rehabilitation doctor. Dr. Nash also admitted that he had had no continuing medical education in the field of orthopedics in the last ten years, and that one hundred percent of his work in the worker's compensation arena "is for claimants and plaintiffs." Record at 160. Kroger presented evidence that the Medical Licensing Board had previously found that Dr. Nash had engaged in fraud and material deception in the course of his professional activities. A short time after the conclusion of the evidentiary hearing on May 23, 2000, Kroger increased its settlement offer to $8,500.

On June 10, 2000, Ayers advised Yund of this offer and the $2,336.63 in litigation expenses, of which $1,486 were expenses for Dr. Nash, who charged $986 for his examination of Yund and $500 for his testimony at her hearing. Two days later Yund terminated Ayers as her attorney and thereafter settled *pro se* directly with

counsel for Kroger for $8,500. On June 20 Yund filed a complaint with the Board assailing the performance of Dr. Nash and his fees, alleging that her medical examination by Dr. Nash was conducted "in my attorney's office" and lasted only 5–8 minutes. Record at 40. Yund declared "I do not feel I owe [Ayers] the full amount he is asking." Record at 33.

The settlement was approved by Board Chairman G. Terrence Coriden on June 28, 2000, in an Award which ordered the settlement sum paid directly to Yund. Ayers then petitioned the Board for an attorney fee award of $1,700 plus $2,336.63 in expenses. The $1,700 attorney fee was consistent with the Board's fee schedule which provides for an attorney fee of 20% of recoveries under $10,000. Ind. Admin. Code tit. 631, r. 1–1–24. Yund responded with further complaints against Ayers in which she concluded: "I believe $1700.00 dollars (the 20% I agreed to pay for attorney fees[] ] is more than fair. Mr. Ayers can pay whatever expenses HE has incurred out of that amount. Considering the facts of this case I feel I am being more than generous with this amount." Record at 68.

On August 4, 2000, Chairman Coriden ordered "that $1,200.00 shall be paid to plaintiff's counsel" but summarily added: "However, no expenses of Dr. Nash as they relate to the plaintiff shall be paid by the plaintiff." Record at 77. The award was silent as to the remainder of the expenses, and the attorney fees ordered were thus $500 less than the $1,700 fee to which Yund's attorney would have been entitled pursuant to the Board's fee schedule. The Full Board affirmed. Record at 111.

WR & A initiated this appeal. When both Yund and Kroger notified the Clerk of Courts of their intentions not to file any briefs, the Court of Appeals issued notice to the Indiana Attorney General and the Worker's Compensation Board, which filed a brief defending the Board's decision. Chairman Coriden personally appeared as counsel for the Board. Referring to his order regarding Dr. Nash's fees, the chairman's brief to the Court of Appeals states that, "[t]he Board found [Dr. Nash's charges for medical services] to be unreasonable." Br. of Board at 3. His brief also describes his order as a "decision to shield the plaintiff from the unreasonable charges of Dr. Nash." Br. of Board at 5. The Court of Appeals affirmed but held that the Board's ruling "does not supersede the terms of an attorney-client contract" nor does it "impair the respective rights and responsibilities of the parties under the contract, which are an ordinary civil matter." *Wernle, Ristine & Ayers v. Yund*, 758 N.E.2d 558, 562 (Ind.Ct.App. 2001), *aff'd on reh'g*, 764 N.E.2d 716 (Ind. Ct.App.2002). We granted transfer. 783 N.E.2d 691 (Ind.2002).

In its appeal from the Board's Award, WR & A contends that: (a) the Board does not have statutory authority over an attorney's litigation expenses—specifically, the expenses for Dr. Nash as an expert witness and consultant in this case; (b) the Board should have honored and enforced the contract between WR & A and Yund; and (c) the Board's order forces WR & A to violate the requirements of Professional Conduct Rule 1.8 regarding payment of client expenses. WR & A does not contest the $1,200 attorney fee award, the adequacy of the Board's findings, nor the Board's determination as to the amount of Dr. Nash's fees. Dr. Nash did not seek review.

Under the Indiana Worker's Compensation Act ("the Act"), the Board is authorized "[t]o approve claims for medical services or attorney's fees and the charges for nurses and hospitals." Ind.Code § 22–3–

1–3(b)(3). In relevant part, the Act also provides:

> [T]he fees of attorneys and physicians and charges of nurses and hospitals for services under IC 22–3–2 through IC 22–3–6 shall be subject to the approval of the [Board.] When any claimant for compensation is represented by an attorney in the prosecution of his claim, the [Board] shall fix and state in the award, if compensation be awarded, the amount of the claimant's attorney's fees. The fee so fixed shall be binding upon both the claimant and his attorney, and the employer shall pay to the attorney out of the award the fee so fixed, and the receipt of the attorney therefor shall fully acquit the employer for an equal portion of the award....

I.C. § 22–3–4–12. Neither the Act nor the Indiana Administrative Code expressly refers to litigation expenses, nor do they address a claimant-employee's liability to reimburse her attorney for litigation expenses. *See* 631 IAC 1–1–24.

The Act does not distinguish between the fees of treating physicians and those of non-treating physicians whose services may include examinations, evaluations, expertise, testimony, etc.[1] It expressly provides that "the fees of attorneys and physicians" are subject to the approval of the Board. I.C. 22–3–4–12. We have long adhered to the rule that "the Worker's Compensation Act should be liberally construed to effectuate the humane purposes of the Act, and that doubts in the application of terms are to be resolved in favor of the employee." *Stump v. Commercial Union,* 601 N.E.2d 327, 331–32 (Ind.1992); *see also Talas v. Correct Piping Co., Inc.,*

435 N.E.2d 22, 28 (Ind.1982). In the absence of contrary statutory language, we conclude that the Board's authority to limit physicians' fees in worker's compensation cases encompasses all fees of physicians, including those of non-treating physicians.

We hold that the effect of the Board's order was to determine that Dr. Nash is entitled to no fee for his services in this case, and that such a determination is within the Board's authority to approve the fees of physicians.

WR & A next contends that its attorney/client contract with Yund is controlling, is not subject to the Board's approval authority, and should have been enforced by the Board. The WR & A/Yund contract itself acknowledges that the attorney fees were "limited to such fees as may be approved" by the Board. Record at 56. It has long been recognized that agreements to pay worker's compensation attorney fees contrary to the amounts approved by the Board are not enforceable. *Buckler v. Hilt,* 209 Ind. 541, 200 N.E. 219 (1936); *Bauer v. Biel,* 132 Ind.App. 224, 177 N.E.2d 269 (1961); *Rickert v. Schreiber,* 116 Ind.App. 621, 66 N.E.2d 769 (1946). WR & A does not challenge the Board's authority to approve its fees for services in this case, but argues that the Board may not invalidate other terms of the attorney-client agreement wherein Yund expressly agreed to be responsible for all medical and other litigation expenses. Because Dr. Nash is entitled to no fees in this matter, however, WR & A is not obligated to pay Dr. Nash and thus Yund has no contractual responsibility to WR & A for these fees. The Board's order does not

---

1. A reference to non-treating physicians is found in Indiana Code § 22–3–4–11 which permits the Board to appoint a physician to conduct a medical examination and to testify thereto, and specifies that the physician shall be allowed traveling expenses and a reasonable fee fixed by the Board, which shall be paid by the state on special order of the Board.

improperly conflict with the attorney-client agreement.

WR & A also contends that the Board's order that Dr. Nash's expenses not be paid by Yund operates to prohibit WR & A from seeking Yund's payment of the litigation expenses for Dr. Nash's services, and thus requires payment of a client's litigation expenses contrary to the Rules of Professional Conduct.

The Indiana Rules of Professional Conduct prohibit a lawyer from providing financial assistance to a client, subject to two exceptions: "(1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client." Ind. Professional Conduct Rule 1.8(e). Without explanation or supporting evidence, WR & A summarily alleges that these conditions "do not apply here." Br. of Appellant at 8. As observed by the Court of Appeals, it is not uncommon that, "despite a client's contractual agreement to reimburse the attorney for [litigation] expenses, the client may simply not have the funds available to pay and the attorney is forced to absorb the loss." *Wernle,* 758 N.E.2d at 562 n. 9.

Although the Board's order prohibits WR & A from seeking repayment of Dr. Nash's fees from Yund, WR & A has not established that it necessarily requires a violation of Rule 1.8(e). As noted above, because Dr. Nash is entitled to no fees in this matter, WR & A is not obligated to pay Dr. Nash and thus there is nothing for Yund to repay.

In addition, Rule 1.8(e) expressly permits lawyers to advance expenses of litigation if the client is indigent, and the record in this case does not exclude the possibility that Yund was indigent under Rule 1.8(e), which would relieve WR & A from seeking

Yund's repayment if WR & A had been required to pay Dr. Nash's fees. Rule 1.8(e) also permits lawyers to advance expenses of litigation if repayment is "contingent on the outcome of the matter." A Board decision regarding the payment of a physician's fees for examination, consultation, and testimony is part of the "outcome" and could thus fall within this exception to Rule 1.8(e)'s proscription against lawyers providing financial assistance to a client. WR & A has failed to demonstrate that the Board's order compels a violation of Indiana Professional Conduct Rule 1.8.

We hold that the Board's order that "no expenses of Dr. Nash as they relate to the plaintiff shall be paid by the plaintiff" is within the Board's statutory authority to approve the fees of physicians. We further find that WR & A has failed to demonstrate that the Board's order necessarily conflicts with the WR & A/Yund fee contract, or with WR & A's obligations under Indiana Professional Conduct Rule 1.8(e). The judgment of the Worker's Compensation Board of Indiana is affirmed.

SHEPARD, C.J., and SULLIVAN and RUCKER, JJ., concur.

BOEHM, J., concurring in part and dissenting in part with separate opinion.

BOEHM, J, concurring in part and dissenting in part.

As I understand the majority opinion, it holds that Dr. Nash's charges are not recoverable by Dr. Nash from anyone. To reach that result, the majority reasons 1) the Board may approve physicians' charges for evaluative services as well as the charges by treating physicians; 2) the Board disapproved Nash's charges; 3) as a result, nobody owes Nash for his services; 4) the law firm's agreement with the worker that the worker will reimburse out of

pocket charges has no bearing on this issue because, in light of conclusion # 3, there is no charge to reimburse. I think this analysis focuses on the wrong agreement and resolves an issue that is not before the court involving a party who is not before the court. The missing link in this chain of reasoning, and the one that in my view is controlling, is the arrangement between the lawyer and the doctor.

As I see it, the majority properly begins the resolution of this case by holding that fees of both treating and testifying physicians are subject to Board approval. I agree. But the issue is the consequences of Board disapproval of an expert's fee. We have long held that an attorney's agreement with a worker providing for a fee in excess of the fee permitted under the Board's schedule is unenforceable without Board approval. *Buckler v. Hilt,* 209 Ind. 541, 200 N.E. 219 (1936). Collection of such a fee is a violation of the prohibition in Rule Professional Responsibility 1.5(a) against collection of unreasonable fees. *In re Maley,* 674 N.E.2d 544, 546 (1996). That means the lawyer cannot collect a larger fee from the client, even if the client has agreed to it. As the majority points out, the statute makes "fees" of attorneys and physicians subject to Board approval, but does not explicitly refer to litigation expenses. I agree that a "fee" of a testifying physician is subject to this provision, just as much as the fee of a treating physician. Where I part company with the majority is in determining the consequences of Board disapproval of a testifying physician's fee. I agree with the majority that Board disapproval renders an expert's fee uncollectible from the client, whatever the client's fee agreement provides. This statutory scheme is designed to prevent exploitation of the worker by the professionals, and to maximize the amounts that are dedicated to compensating the victims of industrial accidents.

Capping the amounts that can be charged to the worker is fully consistent with that goal. The lawyer is charged with knowledge of this arrangement and therefore cannot charge more than the fee arrangement provided by the Administrative Code, 631 IAC 1–1–24, unless the Board approves it.

It seems to me that the statute should be read to address the recovery of the expenses of litigation, whether testifying physicians or otherwise, when it provides that lawyers' "fees" are subject to approval. Just as a testifying physician's fee may be unreasonable, so also may other expenses be unreasonable in light of the nature of the case and the amounts involved. A physician's fee may be unreasonable because it is excessive for the services rendered. It also may be unreasonable not because the amount is unreasonably large for the service performed, but because performing the service was unreasonable under the circumstances of the case. Just as there may be too many depositions in garden spots around the world, there may be too much expert testimony for a particular case. If so the expense may be unreasonable even though the charges are in the amounts customarily paid for the goods or services. To be sure, any contention that an expense was unreasonable should be evaluated with a strong presumption that the expense was proper, and unreasonable expenses are hopefully rare. But if a lawyer incurs unreasonable expenses in pursuit of a claim it has the same effect on the worker as collection of an excessive fee for the lawyer's services. If the Board finds an unreasonable expense, it should be subject to disallowance and the worker should be relieved of that burden. Although it is not dispositive, it is interesting to note that WR & A apparently shares this view. The action that precip-

itated this issue was his petition for approval of fees and expenses, including Dr. Nash's fee, which was apparently treated as a litigation expense.

All of this, however, does not resolve the rights of persons other than the worker whose obligation to pay is terminated by the Board's finding that the expense is unreasonable. Whether the supplier of the unreasonable service can still collect from somebody is another issue. If the lawyer is the supplier, the answer is easy: an excessive fee is not collectible from the client, and I think it should be clear that the lawyer cannot circumvent that statutory provision by obtaining an undertaking from someone else—say, the worker's family—to pay a fee that the client could not be obliged to pay. The reason it is not unfair to put that burden on the lawyer is the lawyer is responsible for understanding the law and knowing that the Board's approval may be an obstacle to enforcement of a fee agreement.

The same reasoning does not apply to other suppliers of services. If for example, the Board determined that the lawyer's selection of Cancun as a deposition site was unreasonable and the expense should not be borne by the worker, neither the hotel in Mexico nor the reporter who transcribed the deposition should bear that economic burden. I would conclude, therefore, that at least some suppliers of unreasonable litigation services may collect from the lawyer for services rendered. Indeed, in almost all those cases the lawyer, not the client, will be the person who made the decision to employ the vendor, and who contracted for the services. The supplier may not be aware of any limitations on the ability of the lawyer to recover from the client, or even that the lawyer is working on an Indiana Workers' Compensation matter.

A physician is in a somewhat different position from other suppliers of litigation services. The statute expressly purports to regulate physician's fees, and, whether treating or testifying, the doctor knows that a workers compensation matter is in issue. This brings me to what I think is the unresolved and unresolvable issue in this case. We have no basis to conclude what, if any, contract or course of dealing has governed the relationship between Dr. Nash and the lawyer. It is easy to imagine at least four scenarios: 1) the doctor agreed to take whatever the Board approves and no more; 2) the lawyer agreed to compensate the doctor at a given rate, whatever the Board approves; 3) there is no relevant agreement or course of dealing between the two or 4) the two operated on the assumption, mistakenly, that the worker would bear the doctor's fee.

WR & A here argues that the Board cannot disapprove Dr. Nash's fee, because to do so would require the lawyer to pay it in violation of Rule of Professional Conduct 1.8(e). I think this contention focuses the real issue, but proceeds from a number of flawed assumptions. For WR & A's argument to hold water, it must be true that Dr. Nash is entitled to recover from the lawyer as a matter of contract law and also that the lawyer's paying Dr. Nash would violate RPC 1.8(e). I think the first is unknowable on this record, though either a formal agreement or some doctrines of contract law arising from the conduct of the parties could product that result. Whether or not WR & A is liable to Nash in this case, the assumption that paying Nash would violate WR & A's professional obligations is in my view incorrect. RPC 1.8(e)(1) expressly authorizes a lawyer to absorb litigation expenses whose repayment by the client is "contingent upon the outcome of the matter." For the reasons already given, I agree that the workers' compensation statute precludes collection

of Dr. Nash's fee from the worker. This prevents collection from the worker either directly, by payment by the worker to Dr. Nash, or indirectly by reimbursing the lawyer for an unreasonable litigation expense. If the expense is not disapproved, its payment by the worker may be authorized as an expense of litigation. But if it is disapproved, it may not be charged to the worker. As a matter of law, therefore, any reimbursement of a fee from the client's pocket is "contingent upon the outcome of the matter," namely the outcome that the Board not disapprove it. The Rules of Professional Conduct therefore present no obstacle to the lawyer's paying the doctor's fee without reimbursement from the client. The Restatement of the Law Governing Lawyers uses the same language. A lawyer may make a loan covering litigation expenses, "the payment of which to the lawyer may be contingent on the outcome of the matter." *Restatement (Third) of the Law Governing Lawyers* § 36 (2000). The comments make clear that this includes lawyer's payment of witness fee with only contingent reimbursement. *Id.* cmt. c.

Whether this legal regime leaves Dr. Nash with any recourse against the lawyer is unknowable on this record, but I would not hold, as I understand the majority does, that the law precludes collection of a disapproved expert fee from the lawyer under any circumstances. There may be cases where a doctor, particularly one with specialized skills and in great demand, may refuse to participate in a contingent fee arrangement and demand compensation at an agreed rate whether the Board approves or not. I can see no reason in policy why the lawyer should not be able to make the judgment whether the lawyer is willing to underwrite that potential expense. This is the same sort of risk/reward analysis lawyers engage in when evaluating any contingent fee arrangement. To be sure worker's compensation practice may be less lucrative than some other forms of contingent fee work, but it is the lawyer, not the law, who should be able to make the decision in a given case whether it is sensible to take that risk. The driving policy in these statutory provisions governing legal fees and expenses is protection of the worker. I think it is in the worker's interest that the lawyer be able to make an agreement with an expert whereby the lawyer assumes the risk of guaranteeing the expert's fees. Whether it is good judgment in any given case to enter into that arrangement should be left to the lawyer.

In sum, I agree with the majority that the Board may approve or disapprove the fees of a testifying physician. But I think the consequence of disapproval is only that the worker does not bear that cost, and the majority incorrectly purports to resolve payment as between the lawyer and the doctor. In my view the Board has no power to adjudicate the issue of whether the lawyer or the doctor bears that cost because the doctor is not a party to the proceeding and, unlike the lawyer, is not bound by the statutory restrictions on collecting from some collateral guarantor if the worker is not obligated for the fee. The Board itself seems to share that view. Its order stated that Dr. Nash's fees are not to be "paid by the plaintiff." It did not purport to have the effect the majority gives it, and I do not believe the Board has jurisdiction to make such a determination.