BOARD OF COMMISSIONERS OF HENDRICKS COUNTY, Indiana, Appellant–Defendant/Cross–Claimant,

and

Daum LLC, Daum Trucking, Inc., and Robert Daum, Appellants–Plaintiffs/Counterclaim Defendants,

v.

TOWN OF PLAINFIELD, Indiana, Town of Plainfield Town Council, and Town of Plainfield Stormwater Management Department, Appellees–Defendants/Counterclaimants/Cross–Claim Defendants.

No. 32A05–0806–CV–342.

Court of Appeals of Indiana.

July 14, 2009.

Gregory Steuerwald, Steuerwald Zielinski & Witham, Danville, IN, for Hendricks County Commissioners.

J. Christopher Janak, Stephen C. Unger, Curtis T. Jones, Bose McKinney & Evans, Indianapolis, IN, for Daum LLC, Daum Trucking, Robert Daum.

Melvin R. Daniel, James B. Chapman II, Dann Pecar Newman & Kleiman, P.C., Indianapolis, IN, Attorneys for Appellees.

## OPINION

KIRSCH, Judge.

Daum LLC, Daum Trucking, Inc., Robert Daum (collectively, "Daum"), and Board of Commissioners of Hendricks County ("Commissioners") appeal from the trial court's grant of summary judgment in favor of Town of Plainfield, Indiana ("Plainfield"), Town of Plainfield Town Council ("Town Council"), and Town of Plainfield Stormwater Management Department ("Stormwater Department") (collectively, "Plainfield Defendants"). Daum and Commissioners are represented by separate counsel, but join together in the following consolidated and restated issues:

I. Whether the trial court erred, as a matter of law, when it granted Plainfield Defendants' motion for summary judgment, which sought a declaratory judgment as to the

validity of Plainfield's own municipal ordinance; and.

II. Whether the trial court erred as a matter of law when it held that Plainfield Defendants could exercise storm water jurisdiction and enforce Plainfield's storm water fee outside the town's corporate boundaries.

Daum, alone, raises the following issue:

III. Whether the trial court erred when it failed to grant Daum's motion for summary judgment as against either Plainfield Defendants or Commissioners regarding the imposition of storm water fees against Daum's property.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY[1]

Plainfield is a town located in Hendricks County, Indiana. Town Council, which is comprised of five members, is the legislative body of Plainfield and is organized under and vested with authority arising from Indiana Code chapter 36–5–2.[2] Commissioners is a three-member commission, which acts as the executive body of Hendricks County. Stormwater Department was established in 2006 for the purpose of implementing capital improvements and engaging in operation and maintenance activities to comply with federal and state environmental requirements. *Appellants' App.* at 93. Plainfield owns and operates a municipal sewer system, which consists of four sewage treatment facilities. *Id.* at 342.

Pursuant to the 1987 amendments to the federal Clean Water Act, the United States Environmental Protection Agency ("EPA") developed storm water regulations to address issues of water quality. *Appellees' Br.* at 2 (citing *Appellants' App.* at 342). The new regulations were implemented in two phases and, in Indiana, were enforced by the EPA through the Indiana Department of Environmental Management ("IDEM"). *Id.* at 2. Phase I of the regulations pertained to areas serving an urban population greater than 100,-000 and, in Indiana, affected only Indianapolis. Phase II, in part, affected nearly 200 Municipal Separate Storm Sewer Systems ("MS4") in the State, including Plainfield and Hendricks County.

An MS4 is:

a conveyance or system of conveyances, including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, manmade channels, or storm drains, that is:

(A) owned or operated by a:

(i) federal, state, city, town, county, district, association, or other public body ... having jurisdiction over storm water, including special districts under state law such as a sewer district, flood control district, or drainage district, or similar entity ... that discharges into waters of the state; or

(ii) privately owned storm water utility, hospital, university, or college having jurisdiction over storm water that discharges into the waters of the state;

(B) designated or used for collecting or conveying storm water;

(C) not a combined sewer; and

---

1. We held oral argument in Indianapolis on February 24, 2009. We commend counsel on the quality their oral and written advocacy.

2. Indiana Code chapter 36–5–2 pertains to town government, especially governing by a town's legislative body and its executive.

(D) not part of a publicly owned treatment works.... [3]

327 Ind. Admin. Code 15–13–5(43). To meet the new storm water regulations, each designated MS4 was required to submit a permit application to IDEM, a part of which included a Storm Water Quality Management Plan ("SWQMP").[4] *Appellees' Br.* at 2. Plainfield's SWQMP described its MS4 as "coincid[ing] with the incorporated limits of the Town of Plainfield, Hendricks County, Indiana.... The Plainfield MS4 Area may grow as new areas are annexed into the corporate limits." *Appellants' App.* at 415.

On July 11, 2006, Commissioners adopted Ordinance No.2006–15 ("County Ordinance"), which created a County Stormwater Management Board. Noting that county storm water management is mandated under Indiana Rule 327 I.A.C. 15–13, the County Ordinance stated Hendricks County's obligation to regulate storm water quality in compliance with the amendments to the Water Quality Act of 1987. *Id.* at 209. The County Ordinance also recognized that, under Indiana Code chapter 8–1.5–5, Hendricks County has the power to create a storm water board for the purpose of managing storm water, and that "[t]he Board ... shall have those powers provided for under Ind.Code § 8–1.5–5." *Appellants' Br.* at 7. The County Ordinance did not adopt a fee structure.

About two weeks later, on July 24, 2006,[5] Town Council adopted Ordinance No. 20–2006 ("Town Ordinance").[6] Under the Town Ordinance, the Stormwater Department was established for the purpose of implementing storm water improvements and, like the County Ordinance, to engage in operation and maintenance activities to comply with federal and state environmental laws. *Appellants' App.* at 93, 324. The Town Ordinance authorized the Stormwater Department "to impose a storm water fee 'on all property within the sewage works system service area.'" *Appellants' Br.* at 8 (quoting *Appellants' App.* at 302). The Town Ordinance defined "Sewage Works Service Area" as all property within the corporate boundaries of Plainfield but also any property outside the corporate boundary receiving sewer services from Plainfield.[7] *Id.* at 8–9. Daum's property was part of Plainfield Defendants' sewage works service area. Plainfield Defendants

---

3. Publicly owned treatment works ("POTW") means "a treatment works ..., which is owned by a State or municipality...." This definition includes any devices and systems used in the storage, treatment, recycling and reclamation of municipal sewage or industrial wastes of a liquid nature. It also includes sewers, pipes and other conveyances only if they convey wastewater to a POTW Treatment Plant.... 40 C.F.R. §§ 122.2, 403.3.

4. A SWQMP "means a comprehensive written document that addresses storm water run-off quality within an MS4 area." 327 I.A.C. 15–13–5(79).

5. While the Town Ordinance is dated "June 24, 2006," the June date is a scrivener's error and both parties agree that the Town Ordinance was adopted on July 24, 2006. *Appellants' Br.* at 8 n. 3; *Appellants' App.* at 333.

6. The Town Ordinance was titled: An Ordinance Supplementing Ordinance No. 17–2003 to Establish a Stormwater Management Department within the Town of Plainfield Sewage Works and to Establish a Schedule of Rates and Charges for the Users of the Stormwater System of Said Town, and Other Matters Connected Therewith. *Appellants' App.* at 171.

7. In setting forth the fees, the Town Ordinance provides that the storm water fee is assessed to each storm water department user within the sewage works of the town, but excludes those under the jurisdiction of the Hendricks County Drainage Board or waters of the State of Indiana.

admit that Daum's property is located outside Plainfield's corporate boundaries, but argue that Plainfield possessed the authority and jurisdiction to impose a storm water fee upon the property because "Daum is and has been a user of Plainfield's sewer system since 1994."[8] *Appellees' Br.* at 6. On September 29, 2006, Plainfield sent notice to Daum stating that Daum would have to pay a storm water fee of $182 per month, which would increase to $364 per month on January 1, 2007. Daum paid the monthly bill under protest starting on January 1, 2007.

On May 10, 2007, Daum filed a two-count "Amended Complaint for Declaratory Judgment and Refund of Fees" ("amended complaint") against Plainfield Defendants and Commissioners.[9] Daum alleged that the Town Ordinance violated, or was inconsistent with, Indiana law for one or more of the following reasons:

(a) it does not properly establish a department and/or board of storm water management;

(b) it does not follow the required procedures for assessing and collecting a storm water user fee;

(c) it illegally charges a storm water user fee on property located outside the corporate boundaries of the municipality; and

(d) it establishes a fee that is discriminatory, unjust, inequitable, erroneous, and not authorized by law.

*Appellants' App.* at 58. Additionally, Daum alleged that if Plainfield is allowed to assess Daum a storm water user fee, then Hendricks County would be prohibited from assessing a fee for the same services. *Id.* Plainfield Defendants and Com-

missioners each filed an answer to the amended complaint. *Id.* at 82–91, 202–08. As part of its answer, Commissioners filed a cross-claim against Plainfield Defendants alleging that the Town Ordinance was limited to property located within the corporate boundaries of Plainfield. *Id.* at 206–08.

On July 9, 2007, Plainfield Defendants filed a Counterclaim for Declaratory Judgment asking the trial court to enter judgment: (1) declaring the Town Ordinance to be a "valid, lawful, proper, constitutional, and enforceable municipal ordinance"; (2) declaring that all fees assessed pursuant to the Town Ordinance are valid and proper; and (3) denying Daum's request for declaratory judgment and refund of fees. *Id.* at 95. That same day, Daum filed a motion requesting that the trial court grant summary judgment in Daum's favor precluding Plainfield Defendants, or in the alternative Hendricks County, from charging Daum a storm water fee. *Id.* at 97–98.

On July 19, 2007, Commissioners filed an answer to Daum's amended complaint and a cross-claim against Plainfield Defendants alleging that the Town Ordinance was limited to property located within the corporate boundaries of Plainfield. *Id.* at 202–08. On July 23, 2007, Daum filed a reply and affirmative defense to Plainfield Defendants' counterclaim, contending that the counterclaim failed to state a claim upon which relief can be granted because "a municipality may not file a declaratory judgment action to determine the validity of its own ordinances." *Id.* at 214. About a week later, Plainfield Defendants filed a reply to Commissioners' cross-claim and again requested a declaratory judgment

---

8. The parties disagree as to when Daum began receiving sewer services from Plainfield—Daum claims it was August 2004, *Appellants' App.* at 373, and Plainfield asserts it was 1994, *Appellees' Br.* at 6.

9. Daum's amended complaint varied from the original complaint only by the addition of Commissioners as a named defendant.

that the Town Ordinance was valid. *Id.* at 220.

In August 2007, Daum filed a motion requesting a stay of Plainfield's storm water fees pending the final resolution of the case. *Id.* at 233. Although the trial court denied Daum's motion, Plainfield Defendants conceded, "it is axiomatic that, if the Court holds the [Town] Ordinance at issue to be invalid, it will also order a return of all fees paid pursuant to the [Town] Ordinance...." *Id.* at 241.

On December 21, 2007, Commissioners filed a response to Daum's motion for summary judgment, and therein adopted Daum's claims against Plainfield Defendants, but moved to deny Daum's motion for summary judgment against Commissioners. *Id.* at 245–47. Specifically, Commissioners contended that, pursuant to Indiana Code section 8–1.5–5–5(a)(3), it had "exclusive jurisdiction for all Territory in the County not located in a municipality." *Id.* at 246. On that same day, Plainfield Defendants filed a cross-motion for summary judgment against Daum only. *Id.* at 260–87.

The trial court held a hearing on the cross-motions for summary judgment. On May 13, 2008, the trial court issued its order: (1) denying Daum's motion for summary judgment against Plainfield Defendants; (2) denying Commissioners's motion for summary judgment against Plainfield Defendants; (3) granting Plainfield Defendants' motion for summary judgment against Daum; and (4) declaring the Town Ordinance was "valid, lawful, proper, and enforceable" pursuant to Plainfield's legislative authority. *Id.* at 24. Daum and Commissioners (together, "Appellants") now appeal jointly.

## DISCUSSION AND DECISION

### I. Standard of Review

When we review the grant or denial of a motion for summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Kaser v. Barker,* 811 N.E.2d 930, 931 (Ind.Ct.App.2004), *trans. denied.* Summary judgment is appropriate only where the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Sanders v. Bd. of Comm'rs of Brown County,* 892 N.E.2d 1249, 1251 (Ind.Ct. App.2008) (citing Ind. Trial Rule 56(C)), *trans. denied* (2009).

> "We consider only those facts which were designated to the trial court at the summary judgment stage. We do not reweigh the evidence, but instead liberally construe the designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact."

*Id.* (quoting *St. Joseph County Police Dep't v. Shumaker,* 812 N.E.2d 1143, 1145 (Ind.Ct.App.2004), *trans. denied* (2005)).

> "Where, as here, the relevant facts are not in dispute and the interpretation of a statute is at issue, such statutory interpretation presents a pure question of law for which summary judgment disposition is particularly appropriate." *Id.* at 1252. Moreover, where the issue presented on appeal is a pure question of law, we review the matter *de novo.*[10] *Id.* The party ap-

---

10. Appellants contend that because the trial court's order on summary judgment was adopted verbatim from Plainfield Defendants' proposed order, this court should stringently

review the trial court's order on summary judgment. *Appellants' Br.* at 13–14. While the "practice of accepting verbatim a party's proposed findings of fact 'weakens our confi-

pealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. *Kaser*, 811 N.E.2d at 932. Finally, our standard of review is not altered by cross-motions for summary judgment. *Sanders*, 892 N.E.2d at 1252.

## II. Plainfield Defendants' Declaratory Judgment

We first address Appellants' contention that the trial court erred as a matter of law when it granted summary judgment to Plainfield Defendants on their counterclaim seeking declaratory judgment that the Town Ordinance was valid and enforceable. Specifically, they contend that Plainfield Defendants failed to state an actionable claim because Plainfield Defendants were attempting to use declaratory judgment to validate their own ordinance. *Appellant's Br.* at 38.

Declaratory judgments are governed by Indiana's Uniform Declaratory Judgment Act ("UDJA"), which in relevant part provides:

> Any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Ind.Code § 34–14–1–2. The parties agree that a municipality like Plainfield is a "person" for purposes of the UDJA. In order to obtain declaratory relief, however, such person must also "demonstrate that it has standing within the purview of the above statutory provisions." *City of Mishawaka v. Mohney,* 156 Ind.App. 668, 672, 297 N.E.2d 858, 860 (Ind.Ct.App.1973).

■ The parties agree that a municipality seeking relief under the UDJA must show that its rights, status, or other legal relations will be directly affected by the enforcement of the ordinance in question. *Id.* Plainfield Defendants argue that their claim was proper under the UDJA because an actual controversy existed between Plainfield and Daum, and therefore, they had standing to seek declaratory judgment as to the validity of the Town Ordinance. *Appellees' Br.* at 22–23.

Appellants contend that our analysis should be governed by this court's reasoning in *Mohney.* There, the municipality sought a declaratory judgment under the UDJA as to the validity of its own ordinances. *Mohney,* 297 N.E.2d at 859. In finding that the municipality did not have standing under the UDJA, the *Mohney* court reasoned:

> For a municipality to seek a declaratory judgment concerning the constitutional validity of its own freely enacted laws is virtually unprecedented. Our research has disclosed no Indiana cases wherein a municipality and its elected officials have brought such an action. The reason for this absence of applicable case law cannot be lack of doubt on the part of governmental officials as to the validity of their local laws. Rather, the apparent unorthodoxy and unreasonableness of a similar course may have dissuaded many who would most ardently supplicate a court's determination. Moreover, for a municipality to enact ordinances

dence as an appellate court that the findings are the result of considered judgment by the trial court,' " *Wetherald v. Jackson,* 855 N.E.2d 624, 632 (Ind.Ct.App.2006) (quoting *In re the Marriage of Nickels,* 834 N.E.2d 1091, 1095–96 (Ind.Ct.App.2005), *trans. de-* nied (2007)), where, as here, the parties agree that there is no genuine issue of material fact and our review is de novo, the trial court's verbatim acceptance of proposed findings is of no import.

and forthwith implore a court to rule upon their validity appears, at best, incongruous. To construe the Uniform Declaratory Judgment Act as according such a right of action to a governmental body would foster legislative irresponsibility and constrain the courts to review every questionable ordinance enacted in this State.

*Mohney,* 297 N.E.2d at 860–61; *accord Ind. Wholesale Wine & Liquor Co., Inc. v. State ex rel. Ind. Alcoholic Beverage Comm'n,* 662 N.E.2d 950, 958 n. 11 (Ind. Ct.App.1996), *aff'd in part, vacated in part,* 695 N.E.2d 99, 103 (Ind.1998). Rejecting the idea that a municipality's "rights, status or other legal relations" could be "adversely affected by [the municipality's] own deliberate enactment," the *Mohney* court found the municipality lacked standing to seek declaratory judgment. *Mohney,* 297 N.E.2d at 861 (municipality cannot seek declaratory judgment concerning validity of its own ordinance); *see also Common Council of Michigan City v. Bd. of Zoning Appeals of Michigan City,* 881 N.E.2d 1012, 1017 (Ind.Ct.App. 2008) (court frowns upon municipality filing declaratory judgment actions with respect to validity of own ordinances).

Appellants recognize that our court reached a different result in *City of Hobart v. Town of Merrillville,* 401 N.E.2d 726, 728 (Ind.Ct.App.1980), where the City of Hobart was found to have standing under the UDJA to challenge the validity of the Town of Merrillville's ordinance. The facts in *Hobart,* however, are distinguishable both from *Mohney* and the instant case. In *Hobart,* Merrillville had adopted an ordinance annexing territory near Hobart, but had failed to first obtain Hobart's consent as required by statute. Our court determined that Hobart had standing to protect its right of consent and to challenge Merrillville's ordinance. Unlike *Hobart,* here, Plainfield Defendants seek not to declare another ordinance void, but to have their *own* ordinance declared valid. The Appellants argue that Plainfield Defendants cannot bootstrap their counterclaim simply because the Appellants have challenged the validity of the Town Ordinance.

▮ We find Appellants' reasoning to be persuasive. While a municipality can file a declaratory judgment regarding its rights when the ordinance of another municipality or county *affects* those rights, the UDJA does not contemplate that the same municipality can sue to have its own ordinance declared valid. Plainfield Defendants did not have standing under the UDJA to file a counterclaim for declaratory judgment as to the validity of the Town Ordinance. As such, the Plainfield Defendants failed to state an actionable claim in their counterclaim for declaratory judgment that the Town Ordinance was valid. The trial court therefore erred in granting summary judgment in favor of Plainfield Defendants on a finding that the Town Ordinance was valid and enforceable.[11]

### III. Plainfield's Storm Water Jurisdiction

▮ Appellants next argue that the trial court erred, as a matter of law, when it

---

11. Although we find that Plainfield Defendants cannot seek declaratory judgment as to the validity of the Town Ordinance, they are not without remedy. "Like statutes, ordinances are presumed to be valid, and the party challenging an ordinance bears the burden of proving invalidity." *Taylor v. Fall Creek Reg'l Waste Dist.,* 700 N.E.2d 1179, 1184 (Ind.Ct.App.1998), *trans. denied.* Here, Appellants have the burden of proving that the Town Ordinance is invalid as to Daum's property. Additionally, because the Town Ordinance contains a severance clause, any finding that the Town Ordinance's imposition of storm water fee is invalid as to property outside Plainfield's corporate boundaries will not invalidate the rest of the Town Ordinance. *See Appellant's App.* at 68.

held that Plainfield could exercise storm water jurisdiction pursuant to the Town Ordinance, and charge storm water fees for properties outside its corporate boundaries. Appellants first note that, while the parties each claim to have jurisdiction over Daum's property, the trial court failed to address the issue of whether Hendricks County and Plainfield both could validly claim such storm water jurisdiction. Appellants note the well-settled rule that two independent governments cannot "exercise the same powers within the same district, at the same time," because there cannot be "two corporations for the same purposes with co-extensive powers of government extending over the same district." *Appellants' Br.* at 14 (citing *Taylor v. City of Fort Wayne*, 47 Ind. 274, 281 (1874) (holding that a county and municipality could not both exercise the same jurisdiction over the same area)).

The Indiana General Assembly has codified this principle in Indiana Code chapter 36–1–3 (the "Home Rule Act"). Under the Home Rule Act, governmental units are granted the powers needed "for the effective operation of government as to local affairs." *See* Ind.Code § 36–1–3–2. In general, "a unit may exercise any power it has to the extent that the power: (1) is not expressly denied by the Indiana Constitution or by statute; and (2) is not expressly granted to another entity." Ind.Code § 36–1–3–5(a). Accordingly, Appellants argue that where, like here, "a county has been expressly granted jurisdiction to exercise a power in a given area, a town may not exercise the same power in that area." *Appellants' Br.* at 15 (citing *City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1, 2–3 (Ind.2005) (municipality and county could not both control sewer services outside municipality's corporate boundaries); *Town of Plainfield v. Town of Avon*, 757 N.E.2d 705, 711–13 (Ind.Ct.App.2001) (Plainfield could not control

sewer service beyond its corporate boundaries where another entity had already been granted that territory), *trans. denied* (2002); *Town of Merrillville v. Merrillville Conservancy Dist.*, 649 N.E.2d 645, 652 (Ind.Ct.App.1995) (Merrillville could not extend its powers where another governmental entity was already exercising its powers), *trans. denied* (1996)). Under the Home Rule Act, "If there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner." Ind.Code § 36–1–3–6(a).

Appellants argue that Indiana Code chapter 8–1.5–5 (the "Storm Water Act"), "governs a town's storm water management and jurisdiction and draws an unambiguous storm water jurisdiction line at the corporate boundaries of a municipality." *Appellants' Br.* at 16 (citing Ind.Code § 8–1.5–5–5(a)(2)). Appellants assert that the trial court should have analyzed the Town Ordinance exclusively under the Storm Water Act because a statute, such as this, that "deals with a subject in a specific manner[,] controls over [a] statute dealing with the same subject in general terms." *Id.*

Appellants contend that the trial court erred when it looked past the explicit language of the Storm Water Act and held that the Town Ordinance was valid pursuant to Indiana Code chapter 8–1.5–3 (the "Municipal Utilities Act"). While recognizing that the Municipal Utilities Act allows a third class city to manage its storm water jurisdiction under the Municipal Utilities Act, Appellants argue that a town like Plainfield is not given the same authority.

Appellants also contend that it was error for the trial court to merge Plainfield's authority to charge a storm water fee under the Storm Water Act with the extra-

territorial reach of Indiana Code chapter 36–9–23 ("Sewage Works Act"), which allows a municipality to exercise its sewer powers in areas within ten miles outside its corporate boundaries. Ind.Code § 36–9–23–36. Finally, Appellants argue that the trial court ignored the Storm Water Act's geographic limits, i.e., Plainfield's corporate boundaries, by interpreting the special taxing district language, "and all area added to the district," to mean that Plainfield could include Daum's property within the jurisdiction of its storm water special taxing district. *Appellants' Br.* at 21 (citing Ind.Code § 8–1.5–5–5(b)).

Plainfield Defendants recognize that Daum's property is located outside of Plainfield's corporate boundaries, yet insist that, since Daum is and has been a user of Plainfield's sewer system, Plainfield's jurisdiction over Daum's property arises, in part, pursuant to the Municipal Utilities Act, which, they contend, applies to all municipally owned and operated utilities, including Plainfield's sewer utility. *Appellees' Br.* at 4, 6. Plainfield Defendants argue that "as the owner and operator of a municipal utility, [Plainfield] may impose certain fees, charges, and rates upon the users of its utility's services and facilities." *Id.* at 12 (citing Ind.Code § 8–1.5–3–8). Plainfield Defendants maintain that the Town Ordinance was adopted pursuant to the Municipal Utilities Act and, therefore, Plainfield is authorized to charge a storm water user fee as part of the maintenance and operation charges that accompany its sewer utility. *Id.* at 11.[12]

Plainfield Defendants also contend that Plainfield may impose a storm water fee on Daum pursuant to the Sewage Works Act. *Appellees' Br.* at 18. They argue that Indiana Code section 8–1.5–5–5, which defines storm water taxing districts, should be interpreted "in light of" Indiana Code sections 36–9–23–25 and –26, which authorize a municipality's legislative body to establish, by ordinance, just and equitable fees for the use of the municipality's sewer works. *Appellees' Br.* at 18. While Plainfield Defendants admit that these sections of the Sewage Works Act "do not specifically authorize the imposition and collection of a [storm water] user fee," they offer that Indiana Code sections 8–1.5–3–8 and 8–1.5–5–7(b) "authorize the legislative body of a municipality to approve, assess, and collect user fees from the property of the storm water district for the operation and maintenance of the storm water system." *Appellees' Br.* at 18. Plainfield Defendants conclude that, because Daum's storm water flows into Plainfield's sewer system and a municipality's jurisdiction over sewer facilities extends beyond corporate boundaries, it is valid to impose a storm water fee over Daum's property. *Appellees' Br.* at 20 (citing Ind.Code § 36–9–23–36 (a municipality's ten-mile extraterritorial power)).

The goal of statutory construction is to determine, give effect to, and implement the intent of the General Assembly. *Sanders*, 892 N.E.2d at 1251. The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust

12. Plainfield Defendants further justify the imposition of the storm water fee by noting that Daum's property benefits both directly and indirectly from such fee. Plainfield Defendants contend that Daum directly benefits because storm water from his property ultimately flows into, and is treated by, Plainfield's sewer system. Daum indirectly bene- fits because the Town Ordinance generates funds that are used to extend the life of Plainfield's sewage plants, thereby keeping sewer costs low. The trial court cited to these benefits as justification for Plainfield collecting storm water fees from Daum pursuant to the Town Ordinance. *Appellants' App.* at 344–45.

or absurd result. *Id.* Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme. *Id.; Heidbreder Inc. v. Bd. of Zoning Appeals of City of Crown Point,* 858 N.E.2d 199, 200 (Ind.Ct.App.2006), *trans. denied* (2007). To determine legislative intent, we read the sections of an act together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *City of N. Vernon,* 829 N.E.2d at 4; *Sanders,* 892 N.E.2d at 1251; *see also Lake Cent. Sch. Corp. v. Hawk Dev. Corp.,* 793 N.E.2d 1080, 1085 (Ind.Ct.App.2003) ("When two statutes or two sets of statutes are apparently inconsistent in some respects, and yet can be rationalized to give effect to both, then it is our duty to do so."), *trans. denied* (2004). We also examine the statute as a whole. *City of N. Vernon,* 829 N.E.2d at 4–5; *Sanders,* 892 N.E.2d at 1252.

The parties cite to the Municipal Utilities Act, the Sewer Works Act, and the Storm Water Act as support for their respective positions. The Municipal Utilities Act "applies to all municipalities, except consolidated cities, that own or operate utilities," and allows a municipality to provide for "the control of any or all of its municipally owned utilities" by one of four named boards.[13] Ind.Code §§ 8–1.5–3–1, – 3. This act, in part, regulates the delivery of clean water by a municipally-owned water works through the department of water works established under Indiana Code chapter 8–1.5–4. Ind.Code § 8–1.5–3–3(a)(4). The Municipal Utilities Act does not govern the operation of municipally-owned or operated sewage systems. Ind. Code § 8–1.5–1–1; Ind.Code § 8–1–2–1(h); Ind.Code § 8–1.5–3–3(a). The delivery of services by a municipally-owned sewage works is governed by the Sewage Works Act. Ind.Code § 8–1–2–1(g); Ind.Code § 36–9–23. This act generally addresses the operation of municipally-operated sewer services and sets forth the manner by which a municipality may establish fees for services rendered by a sewage works. I.C. § 36–9–23–25.

While the Municipal Utilities Act and the Sewage Works Act each contain a reference to storm water, it is the Storm Water Act that specifically addresses storm water management by towns such as Plainfield and counties such as Hendricks County. The Storm Water Act applies to each 1) municipality, and (2) county that does not have a consolidated city and receives notification from IDEM that the county will be subject to storm water regulation under 327 I.A.C. 15–13. I.C. § 8–1.5–5–1. The statute generally addresses storm water management by designated units, yet specifically provides for the oversight of storm water departments by certain boards depending on whether the entity is a consolidated city, a second class city, or a third class city.[14] Ind.Code § 8–1.5–5–4. Counties and towns, however,

---

13. The statute lists the following four boards: the municipal works board, a board consisting of the members of the municipal legislative body, a utility service board, or the board of directors of the department of waterworks. I.C. § 8–1.5–3–3(a).

14. The department of public works manages storm water for a consolidated city. Ind. Code § 8–1.5–5–3(1). If a second class city has a department of public sanitation under Indiana Code chapter 36–9–25, the members of the board of sanitary commissioners may serve as the members of the board of directors of the department of storm water management. Ind.Code § 8–1.5–5–4(f). A third class city has the option to control its city storm water facilities with the same board that controls the city's municipally-owned utilities under the Municipal Utilities Act. I.C. § 8–1.5–5–4(g)(1) (citing I.C. 8–1.5–3–3(a)).

must manage their storm water departments through specific storm water boards. When a county adopts an ordinance creating a department of storm water management, such department must be controlled by a storm water board comprised of the members of the county executive and the county surveyor. I.C. § 8-1.5-5-4.5. While a town's department of storm water management must also be controlled by a storm water board, that board is comprised of three directors, all of whom are appointed by the town executive and only two of whom may be of the same political party. I.C. § 8-1.5-5-4(c).

■ The Municipal Utilities Act and the Sewage Works Act were enacted prior to the Storm Water Act. "The legislature is presumed to have existing statutes in mind when it adopts a new law." *Freeman v. State*, 658 N.E.2d 68, 70 (Ind.1995). The legislature, therefore, had the opportunity to combine the management of storm water facilities with the management of a water or a sewer utility, but did so only in the case of a consolidated city and second class cities.[15]

During the 2003 session, the Indiana General Assembly amended the Storm Water Act and the Municipal Utilities Act. The new law, which was passed over the Governor's veto in January 2004, made four major changes. First, the Storm Water Act was amended to give any county subject to 327 I.A.C. 15-13 the same power to create a department of storm water management as that given to a municipality. Second, the 2003 amendments changed the manner by which all municipal or county storm water boards could impose a fee under the Storm Water Act. Third, the 2003 amendments carved out an exception in both the Municipal Utilities Act and the Storm Water Act to provide third class cities an additional means by which to manage storm water—either through a board established under the Storm Water Act or through the board that controls the third class city's municipally-owned utilities. Ind.Code §§ 8-1.5-3-3(a), 8-1.5-5-4(g). The legislature carved out third class cities for this combined management yet made no comparable changes for towns or counties.[16] The

---

**15.** For a consolidated city, the board of public works, established by Indiana Code section 36-3-5-6, manages multiple water related functions, including, but not limited to, storm water (Ind.Code § 8-1.5-5-2), and sewage (Ind.Code § 36-9-25-41). For a second class city, the board of sanitary commissioners, which oversees sewage works of a district, (Ind.Code § 36-9-25-9) may also oversee the storm water management of a district (Ind. Code § 8-1.5-5-4(f)).

**16.** The 2003 amendments to the Municipal Utilities Act singled out third class cities for special treatment of storm water by adding the following language in bold:

(a) The legislative body of a municipality may, by ordinance, provide for the control of any or all of its municipally owned utilities by:
(1) the municipal works board;
(2) a board consisting of the members of the municipal legislative body;

(3) a utility service board . . .; or
(4) the board of directors of a department of waterworks established under IC 8-1.5-4.
**The legislative body of a third class city also may adopt an ordinance under this subsection to provide for the control of any or all of its storm water facilities by a board described in subdivisions (1) through (4). An ordinance granting control of any or all of a third class city's storm water facilities to a board described in this subsection may be separate from or combined with an ordinance granting control of the third class city's municipally owned utilities to a board described in this subsection.**
(b) **If, at the time an ordinance is adopted under subsection (a) to grant control of any or all of a third class city's storm water facilities to a board described in subsection (a) the third class city has a department of storm water management**

law as amended reveals the legislative intent that towns and counties continue to manage storm water separately from the management of their sewer and water utilities.

Finally, and most importantly, the addition of county storm departments under the 2003 amendments required conforming changes to the territorial limits of storm water special taxing districts. Ind.Code § 8–1.5–5–5. Special taxing districts for counties were added "for the purpose of providing for the collection and disposal of storm water of the district in the manner that protects public health and welfare and for the purposes of levying special benefit taxes for the purposes of storm water collection and disposal." Ind.Code 8–1.5–5–5(b). After the 2003 amendments, the special taxing district for a municipality was defined as "all territory *within the corporate boundaries of the municipality,*" and a special taxing district for a county was defined as "all the territory in the county that is *not located in a municipality.*" Ind.Code §§ 8–1.5–5–5(a)(2), –5(a)(3) (emphasis added).

The plain language of the Storm Water Act allows the storm water board to "collect user fees from all the property of the storm water district for the operation and maintenance of the storm water system." Ind.Code § 8–1.5–5–7(b). Under Indiana Code section 8–1.5–5–5(a)(2), Plainfield has authority to collect its storm water fee only within its corporate limits, while – 5(a)(3) gives Hendricks County the power to impose storm water fees to those located outside a municipal corporate limit but within the county boundaries.

under IC 8–1.5–5, the ordinance must specify a procedure for the transition of control of the affected storm water facilities from the board of directors of the department of storm water management to the board described in subsection (a).

Plainfield Defendants contend that, notwithstanding the apparent jurisdictional limits of the above language, Indiana Code section 8–1.5–5–5(b) grants them jurisdiction over property outside the town boundaries through the following italicized language: "All territory in the district and *all territory added to the district* is considered to have received special benefit from the storm water collection. . . ." They assert that this language reveals Plainfield's authority to go outside the corporate boundaries to have jurisdiction over properties like Daum's. Appellants, however, argue that this language merely reveals that territory can be added to an existing district after it has been established, i.e., that the district is not static but may grow by means of annexation. We agree. Pursuant to Indiana Code section 8–1.5–5–5(a), a special taxing district is created at the time the legislative body adopts the provisions of the Storm Water Act, and presumably covers only the boundaries then in place. The language "and all territory added" provides a special taxing district with jurisdiction over later annexed property without requiring the legislative body to adopt a second ordinance. As such, we find this language provides no additional storm water jurisdiction for a town such as Plainfield.

The legislative intent of this jurisdictional split between county and town boundaries is suggested by Indiana Code chapter 36–9–28.5, Management of Stormwater Runoff from Developed Real Property ("Stormwater Runoff Act"), which also deals specifically with storm water management. In the Stormwater Runoff Act, the legislature directs all units to adopt

. . . .

*See* P.L. 281–2003, § 1 (2004) (emphasis in original).

policies for the management of storm water runoff and, again provides corporate limits that mirror IC 8–1.5–5.[17] Like the Storm Water Act, the geographic jurisdiction of the Stormwater Runoff Act is split between a town and county at the town's corporate limits, with the only exception being where a town opts to give up its jurisdiction to the county. Ind.Code § 36–9–28.5–5.

The Storm Water Act set geographical boundaries within which a municipal unit could act to address the problems posed by pollutants in storm water. These boundaries were established with environmental and not service utility concerns in mind. Unlike the treatment and delivery of city water and city sewer services, which provide an individual benefit, the management and treatment of storm water that flows into our rivers and streams provides the public benefit of reducing water pollution.

The Storm Water Act did not tie its jurisdiction to that of a sewer or water utility; instead, it set a geographical area. Plainfield's corporate limits define Plainfield's storm water jurisdiction under Indiana Code chapter 8–1.5–5. Property within those limits, regardless of whether the property receives all municipal services, some municipal services, or no municipal services from Plainfield, is covered by Plainfield's storm water jurisdiction. Daum's property is not within Plainfield's corporate boundaries. The trial court erred in granting summary judgment in favor of Plainfield Defendants and against Daum.

As noted above, Daum sought declaratory judgment that the Town Ordinance violates or is inconsistent with Indiana law in four respects. Based on the above reasoning, we find one of Daum's four contentions to be dispositive and conclude that the Town Ordinance illegally charges a storm water fee on property located outside the corporate boundaries of Plainfield. We declare invalid all provisions of the Town Ordinance that authorize the imposition of storm water fees on properties located outside Plainfield's corporate boundaries and order Plainfield to return all fees paid pursuant to the Town Ordinance.

## IV. Daum's Motion for Summary Judgment against Town or County

Finally, Daum contends that the trial court erred in failing to rule on its summary judgment motion against Plainfield or, alternatively, against Hendricks County regarding the validity of imposing storm water fees. The trial court denied Daum's motion as to Plainfield but failed to address Daum's alternative motion against Hendricks County. Daum contends that, because two governmental entities may not exercise the same powers over the same property, the trial court erred in failing to rule on Daum's motion against Hendricks County.

Plainfield Defendants counter that, since Hendricks County has not imposed and Daum has not paid a county storm water fee, a ruling on Daum's motion for sum-

---

17. IC 36–9–28.5–5, in pertinent part, provides:

(b) If the unit is a town, the geographic scope of the town's policy must include all territory located within the town unless the legislative body of the town specifies by resolution that the territory of the town be included in the policy of the county where the town is located.

(c) If the unit is a county, the geographic scope of the county's policy must include:
(1) all territory of the county that is not located within a municipality; and
(2) all territory of the town located in the county that has adopted a resolution under subsection (b).

mary judgment against Hendricks County would have constituted an impermissible advisory opinion. *Appellees' Br.* at 24 (citing *INS Investigations Bureau, Inc. v. Lee,* 709 N.E.2d 736, 742 (Ind.Ct.App.1999) (court may not issue advisory opinions), *trans. denied* ). Plainfield Defendants contend that the trial court did not commit reversible error by failing to rule on this motion for summary judgment.

Here, we find Daum's property does not fall within Plainfield's storm water jurisdiction, and Plainfield has no authority to impose a storm water fee on Daum's property. Finding, as we do, that there is no genuine issue of material fact that Daum's property is within Hendricks County's storm water jurisdiction and, therefore, is subject to storm water fees pursuant to the County Ordinance, we, therefore, remand this case to the trial court with instructions to enter summary judgment in favor of Hendricks County and against Plainfield.

Reversed and remanded.

NAJAM, J., and BAILEY, J., concur.