LaGRANGE COUNTY REGIONAL UTILITY DISTRICT, Appellant–Respondent,

v.

Jerry and Sandy BUBB, Owners of Gordon's Campground, Appellees–Petitioners,

and

Indiana Utility Regulatory Commission, Appellee–Intervenor.

No. 93A02–0905–EX–00442.

Court of Appeals of Indiana.

Oct. 7, 2009.

John R. Gastineau, Eberhard & Gastineau, P.C., Fort Wayne, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, David Lee Steiner, Deputy Attorney General, Beth Krogel Roads, Indiana Utility Regulatory Commission, Indianapolis, IN, Attorneys for Intervenor Indiana Utility Regulatory Commission.

## OPINION

BAKER, Chief Judge.

Here, we are presented with a matter of first impression, namely, whether the Indiana Utility Regulatory Commission (IURC) properly reviewed the rates and fees charged by a regional sewage district at the request of a campground owner. Indiana Code section 13–26–11–2.1 (the Statute), which became effective on January 1, 2005, allows a campground owner to request the IURC to review the fees charged by certain regional utility districts, including regional sewage districts. The Statute also provides that when such a request is made, the IURC's appeals division (CAD) is to conduct an informal review, which includes a "prompt and thorough investigation of the dispute." I.C. § 13–26–11–2.1(d). If the IURC concludes that the campground owner was charged an excessive fee, the regional sewer district "shall" refund the excessive amount. *Id.* at –2.1(e).

Appellant-respondent LaGrange County Regional Utility District (LaGrange) appeals an order issued by the appellee-

intervenor IURC, requiring it to refund an excessive fee to appellees-petitioners Jerry and Sandy Bubb (the Bubbs), owners of Gordon's Campground, arguing that the IURC lost jurisdiction over the dispute. In the alternative, LaGrange contends that even if the IURC retained jurisdiction over the dispute, it did not have the authority to grant the ordered relief. Finding that the IURC retained jurisdiction and that it had the authority to order the relief granted, we affirm the judgment of the IURC.

### FACTS

It appears that the Bubbs were the first campground owners to utilize the Statute when, on March 22, 2006, they sent a letter to the IURC, requesting a review of the rates and fees charged by LaGrange. The IURC received the letter on March 28, 2006.

On March 30, 2006, LaGrange's attorney sent a letter to Kristina Kern Wheeler, general counsel to the IURC, in which he requested that the letter be considered his appearance. In addition, LaGrange's attorney asked how the IURC would proceed in the matter, noting that:

I have reviewed the Commission's rules and procedures for rate-making matters and the resolution of disputes involving utilities subject to the Commission'[s] jurisdiction. Many do not appear to be applicable to a matter of this type. As you probably know, the informal review authorized by the General Assembly under I.C. [§ ] 13–26–11–2.1 is relatively new and unusual in so far as regional sewer districts are concerned. This may be accordingly the first matter of its type to come to the Commission for consideration, and, in order to be fair, I believe it will be necessary that all those involved understand how the Commission will proceed.

Appellant's App. p. 8–9.

According to LaGrange, on April 4, 2006, Ja–Deen Johnson, the director of the CAD, called LaGrange's attorney and informed him that the case would be handled by her and that the process would be governed by 170 Indiana Administrative Code 8.5–2–5 (the Rule). There appears to be no further correspondence between the IURC and LaGrange until close to a year later, on March 14, 2007, when LaGrange received a letter from Director Johnson advising it that the IURC had received a complaint from the Bubbs and that the CAD would conduct "an informal review of this dispute under the authority of IC 13–26–11–2.1(d)." *Id.* at 10.

On April 16, 2007, LaGrange filed a motion to dismiss, arguing that the CAD had not conducted and completed the informal review in a timely manner as mandated by the Statute and the Rule and that, consequently, the IURC no longer had jurisdiction over the dispute. On May 29, 2007, the CAD advised LaGrange that its motion to dismiss had been denied.

On November 21, 2008, the CAD issued its informal disposition of its review. The CAD determined that LaGrange's metered rate for campgrounds was "consistent with rates charged to residential customers for equivalent usage." *Id.* at 52. However, the CAD also determined that LaGrange had overcharged the Bubbs on a monthly reimbursement fee to recover costs associated with implementing a metered rate. Accordingly, the CAD directed LaGrange to reimburse the Bubbs the difference between $34.38, the appropriate fee, and the fee that the Bubbs had actually paid from January 1, 2005.

On December 1, 2008, LaGrange appealed the CAD's informal disposition to the

full IURC, arguing that the IURC was without jurisdiction because it had failed to act in a timely manner and that the relief granted by the CAD was "contrary to law and principles of fairness." *Id.* at 54. On April 29, 2009, the IURC issued its order on the appeal, concluding that the IURC retained jurisdiction because the Rule did not apply and the CAD acted within the parameters of the Statute. However, the IURC also determined that the reimbursement fee that LaGrange owed to the Bubbs was to be calculated from March 22, 2006, the date on which the Bubbs filed their complaint, instead of January 1, 2005. LaGrange now appeals.[1]

## DISCUSSION AND DECISION

### I. Standard of Review

■ The IURC was created by the General Assembly and its "assignment is to insure that public utilities provide constant, reliable, and efficient service to the citizens of Indiana." *N. Ind. Pub. Serv. Co. v. U.S. Steel Corp.,* 907 N.E.2d 1012, 1015 (Ind.2009) (citing *Ind. Bell Tel. Co. v. Ind. Util. Regulatory Comm'n,* 715 N.E.2d 351, 354 n. 3 (Ind.1999)). The IURC can only exercise power conferred to it by statute. *Id.*

■ When reviewing an order issued by the IURC, this court employs a two-tiered standard of review. *Micronet, Inc. v. Ind. Util. Regulatory Comm'n,* 866 N.E.2d 278, 285 (Ind.Ct.App.2007), *trans denied.* First, we determine whether the decision is supported by specific findings of fact and sufficient evidence. *Id.* Second, we consider whether the decision is contrary to law. *Id.* The IURC's decision is contrary to law if it fails to stay within its

jurisdiction or fails to abide by the statutory and legal principles that govern it. *Id.*

In the instant case, LaGrange does not dispute the findings of fact or the evidence in support of the findings. Instead, LaGrange maintains that the IURC acted contrary to law because it failed to stay within its jurisdiction and to abide by the statutory and legal principles that guide it.

### II. Jurisdiction

LaGrange argues that the IURC lost jurisdiction over the Bubbs' complaint because it failed to act in a timely manner pursuant to the Rule and the Statute. Accordingly, LaGrange asserts that the IURC's decision is contrary to law and should be vacated.

### A. The Rule

Although the Statute states that the IURC "may adopt rules under IC 4–22–2 to implement this section," I.C. § 13–26–11–2.1(i), it has failed to do so. Nevertheless, LaGrange argues that the Rule should apply and that the CAD failed to act within the time frame established by the Rule.

The Rule provides that if a customer is dissatisfied with a sewage disposal company's proposed disposition of a complaint, the customer may request that the IURC conduct an informal review. The IURC "shall provide an informal review within twenty-one (21) days." 170 I.A.C. 8.5–2–5(b)(1). In addition, the IURC must mail its written decision to the customer and the sewage disposal company within "thirty (30) days after its receipt of the customer's request." *Id.*

Here, the IURC determined that the Rule was not applicable because it applies to sewage disposal companies, which are defined by 170 Indiana Administrative

---

1. On August 31, 2009, this court granted the IURC's motion to intervene, making it a party to this appeal. Although it appears that the Bubbs are parties, they did not participate in this appeal.

Code 8.5–1–1 as any natural person, firm, association, corporation, or partnership "owning, leasing, or operating any sewage disposal service within the rural areas of this state." By contrast, LaGrange is a regional sewage district, which is defined as a political subdivision. Ind.Code § 13–11–2–164. We agree with the IURC that these definitions are not interchangeable and decline to find the Rule applicable in this case.

 Notwithstanding the above analysis, LaGrange contends that because Director Johnson advised LaGrange that the Rule would be applied, the IURC is now estopped from arguing that the Rule is inapplicable. The party who claims that the doctrine of equitable estoppel applies must show (1) a lack of knowledge as to the facts in question and of the means of acquiring that knowledge; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in position based upon the conduct of the party estopped. *City of Crown Point v. Lake County*, 510 N.E.2d 684, 687 (Ind.1987). In addition, "courts are reluctant to apply equitable estoppel against the government unless it is in the public interest to do so." *U.S. Outdoor Adver. Co., Inc. v. Ind. Dept. of Transp.*, 714 N.E.2d 1244, 1260 (Ind.Ct. App.1999).

As an initial matter, we note that the record is void of any evidence, other than LaGrange's own assertions, indicating that Director Johnson told LaGrange that the Rule would apply. To the contrary, in a letter dated March 14, 2007, Director Johnson informed LaGrange that "the [CAD] of the IURC is conducting an informal review of this dispute under the authority of IC 13–26–11–2.1(d)." Appellant's App. p. 10. Neither this letter nor the letter sent to the Bubbs on the same date referenced the Rule. Furthermore, LaGrange failed to document the content

of its conversation with Director Johnson at that time and did not request written acknowledgement from the IURC. Under these circumstances, we decline to apply the doctrine of equitable estoppel. *See U.S. Outdoor Adver. Co.*, 714 N.E.2d at 1260 (declining to apply the doctrine of equitable estoppels because, among other reasons, the proponent failed to "memorialize the content of his conversations with [agency] employees, [or] … request any written acknowledgments or guidelines from the department").

Even assuming solely for argument's sake that Director Johnson told LaGrange that the Rule would apply, LaGrange has failed to show that it detrimentally relied on this statement. LaGrange contends that it was prejudiced because if the CAD had applied the Rule and issued its informal disposition within thirty days of when the Bubbs filed their complaint, LaGrange would have had to reimburse the Bubbs for the excessive fees that it had collected for thirty days instead of thirty-two months. However, if the CAD would have issued its informal disposition within thirty days, LaGrange would have been unable to collect the excessive fees in the first place. Put another way, LaGrange was forced to reimburse only what it should not have been charging.

Moreover, LaGrange was aware of the Bubbs' complaint and should have had an understanding of the relevant time period in which charges were in dispute. The Statute clearly states that a regional sewage district must refund or credit any payments received in excess of the appropriate monthly charges as determined by the IURC. I.C. § 13–26–11–2.1(e). Finally, we find it puzzling that LaGrange waited a year to file its motion to dismiss instead of filing it immediately after the CAD's time had expired under the Rule. In light of these circumstances, we cannot conclude

that LaGrange detrimentally relied upon the Director Johnson's alleged statements.

That being said, we emphasize that the IURC's failure to promulgate any rules to implement the Statute is inappropriate. We recognize that the Statute uses the permissive term "may," I.C. § 13–26–11–2.1(i), when addressing the IURC's duty to adopt rules rather than the mandatory term "shall." Nevertheless, if the IURC had adopted rules establishing how it would proceed, a portion of this dispute could have been avoided.

### B. The Statute

■ In a related argument, LaGrange maintains that the CAD did not conduct a timely investigation or render its disposition in a timely manner as required by the Statute. The Statute provides, in relevant part, that when a campground owner requests a review, the CAD "shall provide an informal review of the disputed matter. The review must include a prompt and thorough investigation of the dispute." I.C. § 13–26–11–2.1(d).

Here, the IURC received the Bubbs' complaint on March 28, 2006. On April 4, 2006, LaGrange's attorney filed his appearance and requested guidance as to how the IURC would proceed. From the record, it appears that there was no correspondence between LaGrange and the IURC until almost a year later on March 14, 2007, when the CAD sent LaGrange and the Bubbs an acknowledgement of the Bubbs' complaint and a data request. The CAD requested additional information from LaGrange in September 2007, but did not issue its informal disposition until November 21, 2008. This was approximately twenty months after the CAD had sent its first data request and thirty-two months after the Bubbs had filed their complaint.

In light of these circumstances, we certainly agree with the IURC that "the dispute could have been handled in a more timely fashion." Appellant's App. p. 4. Indeed, while we recognize that this was the first instance in which the CAD conducted an investigation under the Statute and that the investigation and informal disposition required detailed and technical findings, thirty-two months between the initial complaint and the informal disposition is an unacceptable length of time and not in keeping with the sentiment of the General Assembly that the CAD conduct "a prompt and thorough investigation." I.C. § 13–26–11–2.1(d).

Notwithstanding our conclusion above, the IURC points out that the Statute contains no specific timeframe in which the CAD must investigate a complaint and issue an informal disposition nor does the Statute state that the IURC loses jurisdiction if the CAD fails to resolve the dispute in a timely manner. In its reply brief, LaGrange points out that the Statute states that the CAD " 'shall' " provide an informal review and that this review " 'must include a prompt and through [sic] investigation.' " Reply Br. p. 3 (quoting I.C. § 13–26–11–2.1(d)) (emphases in original). LaGrange argues that because the CAD failed to conduct a prompt investigation, it lost jurisdiction over the dispute because the Statute makes this requirement mandatory by using the term "must."

This court was presented with a similar issue in *Hancock County Rural Elec. Membership Corp. v. City of Greenfield*, 494 N.E.2d 1294, 1295 (Ind.Ct.App.1986). In *Hancock REMC*, the City of Greenfield (City) had annexed two areas of land that received electrical service from Hancock REMC. *Id.* at 1295. As required by statute, within sixty days, the City petitioned the Public Service Commission (PSC) to change its assigned service area to include the annexed areas, but the PSC failed to rule on the petition within the required ninety days. *Id.* Hancock REMC filed a

motion to dismiss the petition, arguing that the PSC had lost jurisdiction over the petition because it failed to rule on it within ninety days. *Id.* The PSC denied the motion and granted the City's petition. *Id.*

On appeal, this court determined that even though the statute used the word "shall" when addressing the PSC's duty to rule on a petition within ninety days, the time frame was directory rather than mandatory and, therefore, the PSC had retained jurisdiction. *Id.* at 1296. The court reasoned that: (1) the statute did not purport to restrain the PSC from acting on the petition after ninety days nor did it specify any adverse consequences from such failure; (2) the ninety-day provision did not go to the essence of the statutory purpose; and (3) a mandatory construction of the ninety-day provision would frustrate the legislature's purpose. *Id.*

Conversely, in *United Rural Elec. Membership Corp. v. Ind. & Mich. Elec. Co.*, our Supreme Court reached the opposite conclusion. 549 N.E.2d 1019, 1020 (Ind. 1990). In 1982, United REMC and I & M filed a joint petition of agreement, proposing their respective electrical service territories as they were permitted to do by statute. *Id.* The IURC conducted a public hearing in 1983, but never entered an order approving or disapproving the joint agreement. *Id.* In 1984, I & M filed a petition to modify the agreement to allow I & M to service an area that was currently in United REMC's service area and was owned by General Motors. *Id.* After conducting several hearings, the IURC granted I & M's petition to modify and issued an interim order assigning the GM property to I & M. *Id.*

On appeal to our Supreme Court, United REMC argued that the IURC had exceeded its statutory authority by granting I & M's petition to modify because the applica-

ble statute stated that electricity service providers "*shall*" file their petition and boundary maps with the IURC "'on or before March 1, 1983.'" *Id.* at 1021–22 (quoting Ind.Code § 8–1–2.3–3) (emphasis in original). Accordingly, because I & M did not file its petition to modify until 1984, the petition was untimely and the IURC was without jurisdiction to act on it. *Id.*

Our Supreme Court held that the IURC did not have the authority to grant I & M's petition to modify because the legislature had established a definite time limitation, making the term "shall" mandatory rather than merely directory. *Id.* at 1022. The *United REMC* Court reasoned that the "presumption that statutory time deadlines are mandatory and the rule that any doubts about statutory power for a public utility commission are resolved against the commission prevail in this case." *Id.* The *United REMC* Court also noted that the IURC had exceeded its authority in two ways—first when the IURC failed to issue an order within twelve months after United REMC and I & M had filed their joint agreement, and second, by granting I & M's petition to modify because the statute did not provide for petitions to modify and, therefore, I & M was not within any imaginable statutory time limit. *Id.*

We find the instant case to be more analogous to *Hancock REMC*. Specifically, similar to the statute at issue in *Hancock REMC*, the Statute does not contain language that restrains the IURC from acting if the CAD fails to conduct a prompt investigation. Likewise, the Statute does not provide for an adverse consequence or state that the IURC loses jurisdiction if the CAD fails to conduct a prompt investigation.

Furthermore, unlike the statute at issue in *United REMC*, the "prompt" investigation requirement does not go to the essence of the Statute. The statute at issue

in *United REMC* had been passed after a history of boundary disputes between electricity service providers and it "repeatedly" addressed time limits. *United REMC,* 549 N.E.2d at 1021–23. Here, by contrast, the Statute does not provide a definite time limit within which the CAD must investigate a dispute and issue its informal disposition.

Moreover, if the IURC lost jurisdiction over a dispute because the CAD failed to conduct a prompt investigation, then the purpose of the Statute would be frustrated. From the plain language of the Statute, we can reasonably infer that the General Assembly sought to establish a method of recourse for campground owners who had been overcharged by their regional sewage district. Indeed, if the IURC was without jurisdiction in the instant case, the Bubbs would have no recourse to recover the excessive fees charged by LaGrange.

Finally, LaGrange has failed to prove that the length of time it took for the CAD to investigate the Bubbs' complaint and issue its informal disposition was fundamentally unfair. LaGrange was on notice that its rates were being questioned and, therefore, it could have taken the necessary steps to prepare for a potential adverse judgment. And as discussed earlier, the fact that LaGrange was required to reimburse the Bubbs for a longer period of time does not render the judgment unfair, inasmuch as LaGrange was only required to reimburse what is should not have charged in the first place. Therefore, this argument fails and the IURC retained jurisdiction over the dispute.

### III. Authority to Grant Relief

■ LaGrange maintains that even if the IURC retained jurisdiction, it did not have authority to grant relief because the CAD's review was untimely. This argument requires us to interpret the Statute, which is a question of law reserved for the courts. *Scalpelli v. State,* 827 N.E.2d 1193, 1196 (Ind.Ct.App.2005). When interpreting a statute, our goal is to "determine, give effect to, and implement the intent of the General Assembly." *Bd. of Comm'rs of Hendricks County v. Town of Plainfield,* 909 N.E.2d 480, 489 (Ind.Ct. App.2009). If a statute is not ambiguous, then we will give the statute its clear and plain meaning. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002). However, if the statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to accomplish that intent. *Id.* We presume that the legislature intended that the language of the statute be given its logical application so as to avoid unjust or absurd results. *Id.*

■ The Statute provides that "[i]f the basic monthly charge paid *while the review is pending* exceeds any monthly charge determined by the commission in a decision issued under subsection (f), the board shall refund or credit the excess amount paid to the owner or operator." I.C. § 13–26–11–2.1(e) (emphasis added). Here, the full IURC ordered LaGrange to refund the Bubbs the amount that LaGrange had overcharged them from March 22, 2006, which was the date on which the Bubbs filed their complaint with the IURC. Therefore, the IURC granted relief that was specifically provided for by the plain language of the Statute because beginning on March 22, 2006, review of the dispute was pending.

Furthermore, the Statute does not contain any language limiting the IURC's ability to grant relief if the CAD does not complete its review of the dispute within a certain time period. Indeed, such a rule would be illogical, inasmuch as relief would be foreclosed to an overcharged campground owner through no fault of his own.

We will not presume that the legislature intended such an absurd and unjust result, especially in light of the plain language of the Statute. *See Cubel v. Cubel,* 876 N.E.2d 1117, 1120 (Ind.2007) (stating that "[t]he Court presumes that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals"). Therefore, we conclude that the IURC had the authority to grant relief and affirm its decision.[2]

The decision of the IURC is affirmed.

FRIEDLANDER, J., and RILEY, J., concur.

2. LaGrange also argues that because the IURC did not follow the time restrictions provided in the Rule, it did not have the authority to grant relief. Inasmuch as we have already concluded that the Rule does not apply to the Statute, we need not address this argument.