INDIANA ASSOCIATION OF BEVERAGE RETAILERS, INC., Appellant,

v.

INDIANA ALCOHOL AND TOBACCO COMMISSION, Appellees,

Indiana Retail Council, Inc., Intervenor.

No. 49A02–1002–PL–125.

Court of Appeals of Indiana.

March 3, 2011.

Anne. L. Cowgur, Matthew M. Price, Kenneth J. Munson, Alex E. Gude, Bingham McHale, LLP, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee Indiana Alcohol and Tobacco Commission.

David E. Wright, Kevin D. Koons, Kroger Gardis & Regas, LLP, Indianapolis, IN, Attorneys for Appellee/Intervenor Indiana Retail Council, Inc.

**OPINION**

DARDEN, Judge.

### STATEMENT OF THE CASE

The Indiana Association of Beverage Retailers, Inc. (the "IABR") appeals the trial court's denial of its motion for a preliminary injunction against the Indiana Alcohol and Tobacco Commission (the "Commission").

We affirm.[1]

### ISSUE

Whether the trial court abused its discretion in denying the IABR's motion for a preliminary injunction.

### FACTS

The General Assembly created the Commission to administer Title 7.1 of the Indiana Code, the purpose of which is to, among other things, "regulate and limit the manufacture, sale, possession, and use of alcohol and alcoholic beverages" in or-

---

1. We heard oral argument in this matter on January 31, 2011, in Indianapolis. We thank counsel for their able presentations.

der to "protect the economic welfare, health, peace, and morals of the people" of Indiana. Ind.Code § 7.1–1–1–1 (as added by Acts 1973, P.L. 55, § 1). As such, the Commission "may issue only the types of permits authorized by [Article 3] subject to the applicable provisions of" Title 7.1. I.C. § 7.1–3–1–1. Article 3 promulgates the rules regarding the application for, and issuance of, alcohol permits.

Specifically, Article 3 provides for the issuance of permits to dealers, meaning those who desire to sell alcohol to customers for consumption off of the dealers' premises. Thus, the Commission may "issue a beer dealer's permit to a person who desires to sell beer to customers for consumption only off the license's premises," I.C. § 7.1–3–5–1, but only if the applicant "is the proprietor of a drug store, grocery store, or package liquor store."[2] I.C. § 7.1–3–5–2(a).

The Commission also may issue a liquor dealer's permit for the sale of liquor to be consumed offsite, see I.C. § 7.1–3–10–1, to "the proprietor of a drug store who holds a license issued by the state board of pharmacy," I.C. § 7.1–3–10–2, or "to the proprietor of a package liquor store."[3] I.C. § 7.1–3–10–4.

Pursuant to Indiana Code section 7.1–3–10–6, the Commission may also, "upon proper application and the payment of the required license fee, issue a beer dealer's permit to the holder of a liquor dealer's permit." Under this section, "applications for both of the permits may be made at the same time," and the provisions of Chapter 5 of Article 3 "shall apply to the issuance and enjoyment of a beer dealer's permit issued under the provisions of this section." I.C. § 7.1–3–10–6. Chapter 5 addresses the issuance of beer dealer's permits in general but does not address quotas for such permits.

Chapter 22 of Article 3, however, does address quotas. Specifically, it limits the number of beer and liquor permits the Commission may grant to dealers. Indiana Code section 7.1–3–22–4[4] provides, in relevant part, as follows:

(a) The commission may grant:

(1) in an incorporated city or town that has a population of less than fifteen thousand one (15,001):

(A) one (1) beer dealer's permit for each two thousand (2,000) persons, or a fraction thereof; or

(B) two (2) beer dealer's permits; whichever is greater, within the incorporated city or town;

(2) in an incorporated city or town that has a population of more than fifteen thousand (15,000) but less than eighty thousand (80,000):

(A) one (1) beer dealer's permit for each three thousand five hundred (3,500) persons, or a fraction thereof; or

---

2. Exceptions are made for proprietors of other stores if certain requirements are met.

3. A "drug store" is defined as "a retail business establishment in which medicines and miscellaneous articles are sold." I.C. § 7.1–1–3–15. Essentially, " 'package liquor store' means a place or establishment ... whose exclusive business is the retail sale of alcoholic beverages" and other limited commodities specified in Indiana Code section 7.1–3–10–5. I.C. § 7.1–1–3–28. There is no provision for the issuance of liquor dealers' permits to gro-

cery stores, a category defined by Indiana Code section 7.1–1–3–18.5.

4. Prior to July 1, 2008, this section read as follows:

The commission may grant only one (1) beer dealer's permit and one (1) liquor dealer's permit in an incorporated city, town, or unincorporated town for each one thousand five hundred (1,500) persons, or fraction thereof, within the incorporated city, town, or unincorporated town.

(B) eight (8) beer dealer's permits; whichever is greater, within the incorporated city or town; and

(3) in an incorporated city or town that has a population of at least eighty thousand (80,000):

(A) one (1) beer dealer's permit for each six thousand (6,000) persons, or a fraction thereof; or

(B) twenty-three (23) beer dealer's permits; whichever is greater, within the incorporated city or town.

(b) The commission may grant:

(1) in an incorporated city or town that has a population of less than fifteen thousand one (15,001):

(A) one (1) liquor dealer's permit for each two thousand (2,000) persons, or a fraction thereof; or

(B) two (2) liquor dealer's permits; whichever is greater, within the incorporated city or town;

(2) in an incorporated city or town that has a population of more than fifteen thousand (15,000) but less than eighty thousand (80,000):

(A) one (1) liquor dealer's permit for each three thousand five hundred (3,500) persons, or a fraction thereof; or

(B) eight (8) liquor dealer's permits; whichever is greater, within the incorporated city or town; and

(3) in an incorporated city or town that has a population of at least eighty thousand (80,000):

(A) one (1) liquor dealer's permit for each six thousand (6,000) persons, or a fraction thereof; or

(B) twenty-three (23) liquor dealer's permits; whichever is greater, within the incorporated city or town.

(c) The commission may grant in an area in the county outside an incorporated city or town:

(1) one (1) beer dealer's permit for each two thousand five hundred (2,500) persons, or a fraction thereof, or two (2) beer dealer's permits, whichever is greater; and

(2) one (1) liquor dealer's permits for each two thousand five hundred (2,500) persons, or a fraction thereof, or two (2) liquor dealer's permits, whichever is greater;

within the area in a county outside an incorporated city or town.

Regarding package liquor store dealer's permits, Indiana Code section 7.1–3–22–5 provides, in part, as follows:

(a) The commission may issue only one (1) package liquor store dealer's permit in an incorporated city or town for each eight thousand (8,000) persons, or fraction thereof, within the incorporated city or town.

On January 14, 2010, the IABR, a non-profit association whose membership is comprised of retail package liquor stores, filed a complaint in Marion Superior Court against the Commission, seeking a declaratory judgment and injunctive relief. The IABR asserted that subsequent to the amendment of Indiana Code section 7.1–3–22–4 in 2008, "the number of permits available per capita" decreased. (App.12). Despite this decrease, the IABR claimed that the Commission "has issued, and continues to issue, dealer's permits despite the fact that there are no permits available for issuance because the quotas have been met or exceeded." (App.12). Specifically, the IABR maintained that

[t]he [Commission] improperly considers grocery stores holding beer dealers' permits as having their own, separate quota under the statute and drug stores holding liquor dealers' permits and beer dealers' permits as having their own, separate quota under the statute. Under the [Commission]'s improper meth-

od for allowing separate quotas for each qualifying entity, however, the [Commission] is allowing, or will allow, up to twice the number of beer dealer permits available under the statutory quota limits. (App.12).

Thus, the IABR sought

a judicial determination of a pure matter of law, namely, a judicial interpretation of Indiana Code § 7.1-3-22-4 and determination that it means what it says— that the [Commission] has the authority to grant dealer's permits only in the number expressly allowed and capped by statute.

(App.10). The IABR further sought injunctive relief, enjoining the Commission "from issuing any dealer's permit that may not be issued under a proper counting of permits. . . ." (App.15).

On January 26, 2010, the IABR filed its motion for a temporary restraining order ("TRO") and preliminary injunction. Maintaining that the Commission "has issued beer dealer's permits in violation of Indiana Code § 7.1-3-22-4 and has expressed its intention to do so again," the IABR sought to enjoin the Commission from issuing new beer dealer's permits "in locations in which Indiana's statutory limits on the number of beer dealer's permits have been met or exceeded." (App.16). In support thereof, the IABR cited to beer dealer's permits already issued in Columbus and Ft. Wayne, which purportedly has exceeded the quotas set forth in Section 4, and the anticipated issuance of "eleven new beer dealer's permits" in Ft. Wayne following a hearing scheduled for February 2, 2010, before the Commission to consider granting the additional new beer dealer's permits. (App.17).

Asserting that the Commission's conduct is unlawful, the IABR argued that it need not show irreparable harm due to the Commission's conduct. Nonetheless, the IABR maintained that "[i]f the [Commission] grants beer dealer's permits in violation of the quota, the law will be violated and [the IABR]'s members' rights to fairly compete with other holders of lawfully obtained beer dealer's permits will be harmed and diluted." (App.23–24). Moreover, the IABR argued that an injunction would serve the public interest by requiring the Commission "to make its actions conform with the laws of the State of Indiana" and limit the sale of alcohol in compliance with the purpose of Title 7.1. (App.24).

On February 1, 2010, the Commission filed its response in opposition to the IABR's motion. The Commission asserted that "[p]ursuant to [its] longstanding interpretation" of Title 7.1 since 1973, "it has issued many different categories of permits which allow for various different types of businesses to sell various different combinations of types of alcohol and has never counted a single permit against more than one statutory quota." (App.40). It argued that this interpretation was reasonable, as indicated by the legislature's failure to make "any changes to the dealer statutes indicating an intent to change [the Commission]'s method of applying the quotas." (App.43). Also on February 1, 2010, the Indiana Retail Council, Inc. (the "Retail Council"), which represents retailers such as grocery and drug stores, filed its motion to intervene, which the trial court granted.

The trial court held a hearing on the IABR's motion on February 1, 2010. Major Robin Lynn Poindexter testified that as the executive officer of the Indiana State Excise Police, he acts as the liaison between the Commission and the State Excise Police and therefore is familiar with the quota system promulgated by Title 7.1. He testified that there are several types of

permits, or licenses, "that the [Commission] recognizes and issues to permittees." (Tr. 15). According to Major Poindexter, each license is categorized based on 1) the kind of alcoholic beverage it covers; 2) the type of permittee to whom it is issued; and 3) whether the permittee is located within an incorporated or unincorporated city or town.

Major Poindexter testified that the permits issued to beer dealers, including those issued for beer and wine, "are all counted against the beer dealer quota" only. (Tr. 16). Those permits issued to drug stores, including permits for liquor only, liquor and beer; or liquor, beer and wine, are "counted against the liquor permit quotas" but not the beer dealer quotas. (Tr. 16). He further testified that permits issued to package liquor stores are not "counted against the liquor or beer quotas" set forth in Indiana Code section 7.1–3–22–4. (Tr. 17). Thus, "each permittee is issued a particular type of permit" and "that particular type of permit is counted against one quota[.]" (Tr. 17). Major Poindexter also testified that the amendment to Indiana Code section 7.1–3–22–4 in 2008 "decreased the number of available grocery store and grocery pharmacy permits"; the Commission, however, continued its practice of not including permits issued to package liquor stores in the general quotas set forth by Section 4. (Tr. 18).

Vicki Stephens, the Commission's controller, testified that since 1973, the Commission has maintained three separate quotas: one for beer dealers, one for liquor dealers, and one for package liquor stores. According to Stephens, the Commission has "applied one permit type to one quota group since 1973[.]" (Tr. 26).

Following the hearing, the trial court issued its findings of fact and conclusions of law. The trial court found, in pertinent part, as follows:

3. The Indiana Code provides for at least three types of dealer permits for the sale of various alcoholic beverages—beer dealers, wine dealers and liquor dealers.

Indiana Code § 7.1–3–5–2 provides that the [C]ommission may only issue a beer dealers' permit to a drug store, a grocery store or a package liquor store.

Indiana Code § 7.1–3–10–1 provides that the [C]ommission may issue a liquor dealer's permit to a person who desires to sell liquor to consumers for consumption off the licensed stores and to package stores. I.C. § 7.1–[3]–10–2; I.C. § 7.1–3–10–4[.] Neither of those sections provides that the [C]ommission may only issue liquor dealer's permits to drug stores and package liquor stores (unlike the express limitations on the recipients of beer dealers' licenses contained in I.C. § 7.1–3–10–1).

4. In the absence of clear statutory guidance, it has been the longstanding practice of the [C]ommission, however, to issue permits allowing the sale of liquor to drug stores and package liquor stores.

5. I.C. § 7.1–3–22–4, entitled "Dealer's Permits," provides certain quotas for liquor dealer permits and beer dealer permits, but does not address all dealers' permits. For example, it makes no mention of either wine dealers or package store dealers. Consequently, the quot[a]s listed in this code section cannot be construed to apply to all situations involving combinations of the sale of liquor, beer and/or wine by one dealer.

6. I.C. § 7.1–3–22–5 (entitled "Package Store Permits") provides a quota for the number of "package liquor store dealer's permits" which can be issued within an incorporated city or town. The Code does not define "package liquor store

dealer permit" or otherwise indicate whether this is meant to be a separate permit or merely a general liquor dealer permit which happens to be issued to a package liquor store. The Code does not specify whether this quota is in addition to the general quota for "liquor dealer permits" or is included within that general quota.

7. In the absence of clear statutory guidance, the [C]ommission for more than thirty years has treated a permit issued to a package store liquor dealer as being separate from a generic liquor dealer's permit and consequently has not counted a permit issued to a package liquor dealer against the generic quota for other types of liquor dealers.

8. I.C. § 7.1–3–10–6 provides that, upon application, the holder of a liquor dealer's permit may also be issued a beer dealer's permit. The code section specifically states that I.C. § 7.1–3–5 (concerning the scope of a beer dealer's permit) applies to permits issued under this section but notably does not state that the generic quota for beer dealer's permits applies to permits issued in accordance with this section (i.e., to drug stores with liquor store permits which also apply to receive a permit allowing the sale of beer).

9. In the absence of clear statutory guidance, it has been the practice of the [C]ommission for more than thirty years to not count permits allowing beer sales issued to liquor dealers or to package liquor store dealers against the generic quota for beer dealers.

10. For more than thirty years, [the Commission] has followed its interpretation that the dealer statutes allow for permits to be issued which bundle together, in different formulations, the rights of different entities to sell different combinations of alcoholic beverages.

Intertwined wit[h] that interpretation, it has counted those permits against different quotas in the same manner for many yea[r]s.

11. Although the legislature has changed the numbers assigned to certain quotas, the legislature has never made any statutory changes to indicate an intent to change [the Commission]'s method of applying the quotas.

12. This legislative acquiescence extends to [the Commission]'s determination that permits issued to drug stores and package liquor stores which sell both liquor and beer (and usually wine) are not counted against the generic beer dealer quota. [The Commission] has instead only applied the generic beer dealer quota to those businesses—usually grocery stores—that do not also sell liquor.

13. [The Commission]'s interpretation is reasonable and entitled to great weight.

14. [The Commission]'s practice of treating permits which allow both liquor and beer sales differently from beer dealer permits which do not allow for the sale of liquor is supported by a reasonable interpretation of I.C. 7.1–3–10–6 (which provides that the holder of a liquor dealer's permit may also be issued a permit allowing beer sales).

15. [The Commission]'s practice gives meaning to I.C. 7.1–3–10–6 by establishing that existing liquor permit holders, whose permits are counted against the liquor dealer and package liquor store permit quota system, may also sell beer without being counted against the generic beer dealer quota system. Such a construction does not conflict with I.C. 7.1–3–22–4 (the generic dealer quota statute). Nothing in I.C. 7.1–3–22–4 states that all permits involving beer

sales must be counted against the quotas it describes.

16. The Court finds that the [IABR] will not suffer irreparable harm.

17. The Court finds that the [IABR] does not have a likelihood of success in a trial on the merits.

(App.4–7).

The trial court then concluded as follows:

1. A motion for preliminary injunction should be granted only upon a finding of the following four factors: "(1) the movant's remedies at law are inadequate, causing irreparable harm pending resolution of its lawsuit; (2) the movant has at least a likelihood of success on the merits at trial; (3) the threatened injury to the movant outweighs the potential harm resulting from the proposed injunction; and (4) the public interest is not disserved by the injunction."

2. "A long adhered to administrative interpretation dating from the legislative enactment, with no subsequent change having been made in the statute involved raises a presumption of legislative acquiescence which is strongly persuasive upon the courts."

3. "When a statute is subject to different interpretations, the interpretation of the statute by the administrative agency is entitled to great weight, unless that interpretation is inconsistent with the statu[t]e itself."

4. "If a court is faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, the court should defer to the agency." "Once a court determines that an administrative agency's interpretation is reasonable, it should 'terminate its analysis' and not address the reasonableness of the other party's interpretation."

5. It is a rule of statutory construction in Indiana that "the enumeration of certain things in a statute necessarily implies the exclusion of all others." Applying this rule of construction adds further weight to the reasonableness of the interpretation by [the Commission] that the generic dealer's permit quota provision does not apply to permits allowing beer sales by the holders of liquor dealer permits.

(App.7–8) (internal citations omitted). Accordingly, the trial court denied the IABR's motion for a TRO and preliminary injunction.

### DECISION

The IABR asserts that the trial court abused its discretion in denying its motion for a preliminary injunction.

To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: (1) the moving party's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the moving party has at least a reasonable likelihood of success on the merits at trial by establishing a prima facie case; (3) the threatened injury to the moving party outweighs the potential harm to the non-moving party resulting from the granting of the injunction; and (4) the public interest would not be disserved. The moving party must prove each of these requirements to obtain a preliminary injunction. *Id.* If the moving party fails to prove even one of these requirements, the trial court's grant of an injunction is an abuse of discretion.

A party appealing from the trial court's denial of an injunction appeals from a negative judgment and must demonstrate that the trial court's judgment is contrary to law; that is, the

evidence of record and the reasonable inferences drawn therefrom are without conflict and lead unerringly to a conclusion opposite that reached by the trial court. We cannot reweigh the evidence or judge the credibility of any witness. Further, while we defer substantially to the trial court's findings of fact, we evaluate questions of law *de novo*.

"The grant or denial of a preliminary injunction is within the sound discretion of the trial court, and the scope of appellate review is limited to deciding whether there has been a clear abuse of discretion." When determining whether to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. When findings and conclusions are made, the reviewing court must determine if the trial court's findings support the judgment. The trial court's judgment will be reversed only when clearly erroneous. Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment.

*Zimmer, Inc. v. Davis,* 922 N.E.2d 68, 71 (Ind.Ct.App.2010) (internal citations omitted).

Here, the IABR contends that it is seeking to enjoin the unlawful practice of issuing excessive permits to dealers in violation of the quota system established by Title 7.1. Specifically, the IABR alleges that the issuance of "beer dealer's permits to holders of liquor dealer's permits without counting the beer dealer's permits against the quota limits established in Indiana Code section 7.1–3–22–4" for those categories of permits violates Indiana law. IABR's Br. at 9.

■■■ Where a party seeks to enjoin activity that is clearly unlawful and against the public interests, the "per se" rule applies.

> The per se rule provides, " '[w]hen the acts sought to be enjoined are unlawful, the plaintiff need not make a showing of irreparable harm or a balance of hardship in his favor.' " However, even when the rule does apply, it does not trump the equitable nature of preliminary injunctions. Rather, the per se rule is " 'used to enjoin activity that is clearly unlawful and against the public interest.' " An injunction is to be denied if the public interest would be substantially adversely affected, even if the plaintiff has a claim.

*Wyatt v. Wheeler,* 936 N.E.2d 232, 240 (Ind.Ct.App.2010) (internal citations omitted).

■■■ As to claimed statutory violations, an injunction under the "per se" rule " 'is only proper when it is clear that [a] statute has been violated.' " *Indiana Family and Soc. Serv. Admin. v. Walgreen Co.,* 769 N.E.2d 158, 162 (Ind.2002) (quoting *Union Twp. Sch. Corp. v. State ex rel. Joyce,* 706 N.E.2d 183, 192 (Ind.Ct.App.1998)). At issue in this case is whether the Commission's interpretation of Article 3 in determining the number of permits it may issue to dealers for beer and liquor is reasonable.

■■■ Statutory interpretation is a matter of law to be determined de novo by this court. *Pendleton v. Aguilar,* 827 N.E.2d 614, 619 (Ind.Ct.App.2005). "A statute that is clear and unambiguous must be read to mean what it plainly expresses, and its plain and obvious meaning may not be enlarged or restricted."

*Indiana Mun. Power Agency v. Town of Edinburgh*, 769 N.E.2d 222, 226 (Ind.Ct. App.2002). "The words and phrases of such a statute shall be taken in their plain, ordinary, and usual sense." *Id.* We therefore shall construe and interpret a statute only if it is ambiguous. *Pendleton*, 827 N.E.2d at 619.

When faced with two conflicting statutory provisions, we seek first to harmonize the two. If the two statutes 'can be read in harmony with one another, we presume that the Legislature intended for them both to have effect.' Statutes relating to the same general subject matter 'are in *pari materia* [on the same subject] and should be construed together so as to produce a harmonious statutory scheme.'

*Klotz v. Hoyt*, 900 N.E.2d 1, 5 (Ind.2009) (internal citations omitted).

■■■ " 'An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself.' " *Pierce v. State Dep't of Corr.*, 885 N.E.2d 77, 89 (Ind.Ct.App.2008) (quoting *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind.2000)).

"Deference to an agency's interpretation of a statute becomes a consideration when a statute is ambiguous and susceptible of more than one reasonable interpretation." When a court is faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, the court should defer to the agency. If a court determines that an agency's interpretation is reasonable, it should terminate its analysis and not address the reasonableness of the other party's proposed interpretation. "Terminating the analysis recognizes 'the general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations.' " However, an agency's incorrect interpretation of a statute is entitled to no weight.

*Id.* (internal citations omitted).

■■■ In attempting to construe Indiana Code sections 7.1–3–10–6, 7.1–3–22–4, and 7.1–3–22–5 together, we find Article 3 to be ambiguous regarding the number of permits the Commission may issue to dealers. Indiana Code section 7.1–3–22–4 governs quotas on the issuance of permits to dealers. Specifically, Section 4 purports to limit the number of beer dealer's permits and the number of liquor dealer's permits issued based on the population of the area where a dealer is located and whether that dealer is located within an incorporated city or town. In addition, Chapter 10 further limits liquor dealer's permits by restricting the issuance of such permits to drug stores and package liquor stores; therefore, grocery stores are excluded from the sale of liquor.

To facilitate the issuance of liquor and beer dealer's permits to those dealers that may hold both, namely, drug stores and package liquor stores, Indiana Code section 7.1–3–10–6 provides:

The [C]ommission may, upon proper application and the payment of the required license fee, issue a beer dealer's permit to the holder of a liquor dealer's permit. However, applications for both of the permits may be made at the same time. The provisions of IC 1971, 7.1–3–5, shall apply to the issuance and enjoyment of a beer dealer's permit issued under the provisions of this section.

Although this section allows for the application and issuance of both types of permits, it is limited only by the provisions of Chapter 5. It does not address the applica-

tion of quotas as provided in Section 4 of Chapter 22; specifically, it does not instruct whether a beer dealer's permit issued to the holder of a liquor dealer's permit under Section 6 shall be counted against the quota set forth in Indiana Code section 7.1–3–22–4.

Moreover, Indiana Code section 7.1–3–22–5 establishes a separate quota for the issuance of package liquor store dealer's permits. Title 7.1, however, does not define "package liquor store dealer's permits." Also, like Indiana Code section 7.1–3–10–6, it does not address the application of quotas as provided in Section 4 of Chapter 22. Thus, it is unclear whether a package liquor store dealer's permit includes the requisite permits to sell both beer and liquor, or whether it is a permit required in addition to a liquor and beer dealer's permit.

Because the Commission is the agency charged with the duty of enforcing Title 7.1 by the promulgation of rules and regulations, we defer to its interpretation of the statutes contained therein as long as the interpretations are reasonable. Given the ambiguities inherent in the above-referenced sections, the Commission has interpreted Article 3 as allowing for three separate quotas to be applied to the various types of holders of dealer's permits: 1) a quota for those holding a package liquor store dealer's permit, under which the holder may sell liquor and beer, which is counted only against the quota for package liquor store dealer's permits; 2) a quota for drug stores[5] holding a liquor dealer's permit, which is counted only against the quota for general liquor dealer's permits under Indiana Code section 7.1–3–22–4(b),

even if they also hold a beer dealer's permit issued pursuant to Indiana Code section 7.1–3–10–6; and 3) a quota for entities holding only a beer dealer's permit issued pursuant to Indiana Code section 7.1–3–22–4(a).[6]

Here, there exist three types of permittees: 1) package liquor stores, which are authorized to sell liquor and beer; 2) drug stores, which are authorized to sell liquor and beer; and 3) grocery stores, which are authorized to sell only beer. The Commission interprets Article 3 as assigning the quotas provided therein separately to each group of permittees. We cannot say that such an interpretation is unreasonable, particularly where, reading Title 7.1 as a whole, and given the qualifying criteria of permittees, the legislature's intent may be construed as limiting the number of permittees rather than the number of total permits issued. *See, e.g.,* I.C. § 7.1–3–22–5 (restricting the number of permittees classified as package liquor stores in a given incorporated city or town by setting a quota on package liquor store dealer's permits, separate from the quotas for liquor dealer's permits and beer dealer's permits); I.C. § 7.1–3–10–6 (providing that the Commission may issue a beer dealer's permit to a permittee already holding or applying for a liquor dealer's permit without referencing quotas).

The Commission's interpretation is also reasonable given the legislature's apparent intent to regulate and limit the sale of liquor to a greater extent than beer. Thus, where a permittee holds a liquor dealer's permit pursuant to the quotas set forth in either Indiana Code section 7.1–3–22–4 or Indiana Code section 7.1–3–22–5,

---

**5.** Again, only drug stores and package liquor stores may sell liquor.

**6.** The IABR does not contest the issuance of wine dealer's permits. Pursuant to Indiana Code section 7.1–3–15–2, the Commission may issue a wine dealer's permit only to a holder of a beer dealer's permit or the holder of a liquor dealer's permit. Title 7.1 does not set a quota on wine dealer's permits.

issuance of a beer dealer's permit shall not be constrained by a separate quota-based restriction. *Compare* I.C. § 7.1–3–5–2 (declaring that drug stores, package liquor stores, *and* grocery stores may sell beer), *with* I.C. §§ 7.1–3–10–2 *and* 7.1–3–10–4 (limiting the issuance of liquor dealer's permits to drug stores and package liquor stores, respectively); *see also* I.C. § 7.1–3–10–6 (allowing that a holder of a liquor dealer's permit may be issued a beer dealer's permit upon proper application, whereas Chapter 5, which addresses beer dealer's permits, makes no such similar provision for holders of beer dealer's permits).

Given the reasonableness of the Commission's interpretation of Article 3, we cannot say that the manner in which it issues dealer's permits violates Title 7.1. The IABR therefore has failed to show that it has at least a reasonable likelihood of success on the merits at trial.

█ Furthermore, as it is not clear that the Commission has violated statutory law, the "per se" rule does not apply to this case. *See Walgreen Co.*, 769 N.E.2d at 162 (stating that the application of the "per se" rule is proper only when it is clear that a statute has been violated). The IABR therefore must show that its members are likely to suffer irreparable harm if no injunction is issued and that the balance of harm weighs in its favor; it has not done so.

Here, the IABR argues that without an injunction, its members' "rights to fairly compete with other holders of lawfully obtained beer dealer's permits will be harmed and diluted." IABR's Br. at 16. We find no merit in this argument as we have found that the Commission's interpretation of Section 4 to be reasonable, and therefore its issuance of permits, is lawful. Also, the IABR has presented no evidence that any of its members have been denied permits due to the Commission's interpretation. In addition, the IABR fails to address how the extent of the purported harm to its members outweighs the potential harm to other classes of permittees if its interpretation of Section 4 were followed.

The IABR has failed to demonstrate that the trial court's judgment is contrary to law. Accordingly, we find no abuse of discretion in denying the IABR's motion for preliminary injunction.[7]

Affirmed.

BRADFORD, J., and BROWN, J., concur.

7. Both the Commission and the Retail Council have asserted, and the trial court found, that legislative acquiescence applies to the Commission's interpretation of Indiana Code section 7.1–3–22–4. Legislative acquiescence, however, does not apply here as there has been no previous *judicial* interpretation of Section 4 by our appellate courts. *See Fraley v. Minger*, 829 N.E.2d 476, 492 (Ind.2005) ("[I]t is well-established that a judicial interpretation of a statute, particularly by the Indiana Supreme Court, accompanied by substantial legislative inaction for a considerable time, may be understood to signify the General Assembly's acquiescence and agreement with the judicial interpretation."). Error notwithstanding, we affirm the trial court's denial of the preliminary injunction. *See Lakes and Rivers Transfer v. Rudolph Robinson Steel Co.*, 795 N.E.2d 1126, 1133 (Ind.Ct.App.2003) ("To the extent that [a] judgment is based on erroneous findings, those findings are superfluous and are not fatal to the judgment if the remaining valid findings and conclusions support the judgment.").