**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**NICHOLAS K. KILE**
**MARK J. CRANDLEY**
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
INDIANA OFFICE OF UTILITY
CONSUMER COUNSELOR:

**A. DAVID STIPPLER**
**DANIEL M. LE VAY**
**SCOTT C. FRANSON**
Indianapolis, Indiana



FILED

Aug 06 2013, 8:43 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| INDIANA-AMERICAN WATER COMPANY, INC., | ) | |
| | ) | |
| Appellant-Intervenor | ) | |
| | ) | |
| vs. | ) | No. 93A02-1301-EX-17 |
| | ) | |
| INDIANA OFFICE OF UTILITY CONSUMER COUNSELOR, | ) | |
| | ) | |
| Appellee-Statutory Party | ) | |
| | ) | |
| CITY OF CROWN POINT, INDIANA, | ) | |
| | ) | |
| Appellee-Intervenor. | ) | |

APPEAL FROM THE INDIANA UTILITY REGULATORY COMMISSION
Cause No. 42351 DSIC 7

**August 6, 2013**

**ROBB, Chief Judge**

Case Summary and Issue

Indiana-American Water Company, Inc., filed a petition with the Indiana Utility Regulatory Commission ("the Commission") for approval of a new distribution system improvement charge ("DSIC") pursuant to Indiana Code chapter 8-1-31. The Commission approved the DSIC but denied Indiana-American's request to include $18 million of costs associated with its accelerated automated meter reading ("AMR") replacement program in the DSIC. Indiana-American now appeals, raising several issues, but we find the following consolidated and restated issue dispositive: whether the Commission erred when it denied including the costs of the accelerated AMR replacement program in the DSIC. Concluding the Commission did not err, we affirm.

Facts and Procedural History

Indiana-American renders water utility service to customers in numerous municipalities and counties throughout the State of Indiana. On October 1, 2012, Indiana-American filed a petition with the Commission for approval of: a new DSIC, a proposed new rate schedule reflecting the new DSIC, and the cost of its eligible distribution system improvements in the new DSIC. After the City of Crown Point filed a petition to intervene and the Commission granted that petition, both Crown Point and the Indiana Office of Utility Consumer Counselor ("OUCC") filed their cases-in-chief and Indiana-American filed its rebuttal. On November 15 and 20, 2012, a public evidentiary hearing on the petition was

held.  On December 27, 2012, the Commission issued a detailed order, approving the DSIC but denying the request to include the costs associated with Indiana-American's accelerated AMR replacement program in the DSIC.  The Commission's order stated, in relevant part, the following:

> Indiana-American included in its DSIC the cost of approximately 90,000 meters to put into place AMR technology by replacing meters without regard to their condition.  [Indiana-American] replaced meters with no less than five to ten years of expected remaining useful life.  [Indiana-American] replaced meter registers on meters placed in service less than five years ago.  In addition to new AMR meters and meter registers, the proposed $18 million DSIC costs include AMR meter reading equipment and meters not yet placed in service. The OUCC questioned whether a project that involved replacing plant [sic] that did not otherwise need to be replaced merely to institute automatic meter reading qualified as "eligible distribution system improvements."  The OUCC asserted that the definition of "distribution system" in our rule, which we must consider to be within the definition of "eligible distribution system improvements," indicates that to be included in a DSIC, a project must be necessary for the transportation of water.  The OUCC based its position in part on the fact that the definition of "distribution system" includes the provision that the addition must be "necessary to transport treated water . . . to the customer."  The OUCC maintained that institution of an AMR program, while it could be prudent and includable in rate base, does not qualify for special ratemaking treatment through a DSIC since retiring equipment early to improve billing and other operational functions does not promote the transportation of water.  Ultimately, the OUCC considers such projects not to be within the evident intent of DSICs in Indiana.  We agree.
> ***
> . . . Although uninstalled meters may be considered "in service" for accounting purposes, we do not find such meters to be "in service" for ratemaking purposes, and specifically, for inclusion in a DSIC. . . .  Meters on shelves do not provide utility service, even if they are "in service" for accounting purposes. Accordingly, uninstalled meters may not be included in a DSIC.
> Further, recovery of the replacement cost of newer traditional meters with AMR meters does not fit within the context of the DSIC, in that the Commission stated in DSIC 1 that the purpose of DSIC recovery is to replace aged infrastructure.  We agree . . . that the replacement of meters older than 10 years could be recoverable in a DSIC. . . .

3

Appellant's Appendix at 15-16 (citation omitted). Indiana-American now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

### I.     Standard of Review

When reviewing an order issued by the Commission, we employ a two-tiered standard of review. LaGrange Cnty. Reg'l Util. Dist. v. Bubb, 914 N.E.2d 807, 810 (Ind. Ct. App. 2009). First, we determine whether the decision is supported by specific findings of fact and sufficient evidence. Id. Second, we consider whether the decision is contrary to law. Id.

Moreover, Indiana-American now challenges the Commission's interpretation of a statute, which is an issue of law we review de novo. Ind. Ass'n of Beverage Retailers, Inc. v. Ind. Alcohol & Tobacco Comm'n, 945 N.E.2d 187, 197 (Ind. Ct. App. 2011), trans. denied. We will read a statute which is clear and unambiguous to mean what it plainly expresses. Id. Moreover, a statute is to be construed so as not to bring about an absurd result. Citizens Action Coal. of Ind., Inc. v. N. Ind. Pub. Serv. Co., 796 N.E.2d 1264, 1269 (Ind. Ct. App. 2003), trans. denied. We give great weight to an interpretation of a statute by an administrative agency charged with the duty of enforcing the statute, unless the interpretation would be inconsistent with the statute itself. Ind. Ass'n of Beverage Retailers, Inc., 945 N.E.2d at 198 (quotation and citations omitted). If we determine that the agency's interpretation is reasonable, we should terminate our analysis and not address the reasonableness of the other party's proposed interpretation. Id. This recognizes the expertise of agencies empowered to interpret and enforce statutes. Id.

4

## II.  DSIC

The purpose of the Commission is to ensure that public utilities provide constant, reliable, and efficient service to the citizens of this State. Ind. Bell Tel. Co., Inc. v. Ind. Util. Regulatory Comm'n, 715 N.E.2d 351, 354 n.3 (Ind. 1999). The Commission is the "fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature." United States Gypsum, Inc. v. Ind. Gas Co., Inc., 735 N.E.2d 790, 795 (Ind. 2000) (quotations and citation omitted). Indiana Code chapter 8-1-31 allows a public utility providing water service to file with the Commission "rate schedules establishing a DSIC that will allow the automatic adjustment of the public utility's basic rates and charges to provide for recovery of DSIC costs." Ind. Code § 8-1-31-8(a). The Commission has stated in the past that "the purpose of a DSIC proceeding is to encourage, through an expedited and automatic rate increase, repair or replacement of a distribution system's aging and failing infrastructure." In re Indiana-American Water Co., Inc., Cause No. 42351 DSIC 1, 2003 WL 21048649 at *19 (Ind. Util. Regulatory Comm'n, Feb. 27, 2003) (finding, in part, certain improvements not to be the type of infrastructure improvements contemplated by DSIC statutes).

DSIC costs are those associated with "eligible distribution system improvements." Ind. Code § 8-1-31-3. "[E]ligible distribution system improvements" are: "new used and useful water utility plant projects that: (1) do not increase revenues by connecting the distribution system to new customers; (2) are in service; and (3) were not included in the public utility's rate base in its most recent general rate case." Ind. Code § 8-1-31-5. Here,

5

the Commission denied the request to include the costs of the accelerated AMR replacement program, in large part, because Indiana-American replaced meters "without regard to their condition." Appellant's App. at 15. Many of the replaced meters had five to ten years of expected remaining useful life. The Commission stated that it could not include these costs in the DSIC because the purpose of DSIC recovery is to replace aged infrastructure. Indiana-American argues that the Commission erred by reading an age requirement into the statute. We disagree.

It was within the province of the Commission to determine what improvements satisfied the definition of "eligible distribution system improvements" under the statute. We agree that replacing equipment prematurely is inconsistent with the overall purpose of the statute. The president of Indiana-American himself had testified in another case that the "overall need to attract financing to replace aging distribution system infrastructure" is what "led Indiana and other states to adopt a DSIC mechanism." Appellee's Appendix at 4 (emphasis added). The Commission relied, in part, upon its definition of a distribution system as an addition that is "necessary to transport treated water from the point it exits the treatment facility to the point at which it is delivered to the customer." 170 I.A.C. 6-1.1-1(c). Replacing functional equipment is not necessary to transport water to customers. While upgrading meters and meter registers to the new technology may lead to more efficient operations for the water utility companies, it does not follow that the new technology was contemplated by—or must be included in—DSIC recovery under the statute. A water company is required to disclose "the age of the plant that was retired" in its petition with the

6

Commission. 170 I.A.C. 6-1.1-5(a)(1). To require the Commission to disregard this information in making its decision could lead to the absurd result of including the costs of replacing the same equipment every few years in DSIC recovery.

And while it appears that a relatively small percentage of the meters replaced were older than ten years and thus satisfied the Commission's age requirement, the Commission denied including those costs in the DSIC because Indiana-American failed to provide sufficient evidence regarding the retirement costs of the older meters that were replaced or the installation costs and costs relating to the AMR meters used to replace the older meters. See Appellant's App. at 16. Indiana-American does not contend that this evidence is in the record, and we therefore affirm the Commission's decision with regard to the older meters.

Moreover, the Commission denied including some of the costs of the accelerated AMR program in the DSIC, in part, due to the fact that many of the meters were not installed. Again, we agree with the Commission's interpretation that while uninstalled meters may be "in service" for accounting purposes, they are not "in service" for ratemaking purposes. This reflects the statutory requirement that the eligible distribution system improvements be "new used and useful water utility plant projects." Ind. Code § 8-1-31-5. In sum, the Commission's interpretation of Indiana Code chapter 8-1-31 to provide DSIC recovery only for the replacement of aged infrastructure is reasonable and it is therefore affirmed.

## Conclusion

The Commission properly interpreted Indiana Code chapter 8-1-31 to provide DSIC recovery only for the replacement of aged infrastructure. Thus, it did not err when it denied

7

Indiana-American's request to include $18 million of costs associated with its accelerated AMR replacement program in the most recent DSIC. We therefore affirm the Commission's order.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.